63  347
180  424

## Clark et al. versus Everhart et al.

1. If false or fraudulent representations be alleged as ground for avoiding a bargain it must be shown that they entered into the vital essence of it.

2. This must be proved by a just inference from what took place at or about the time of contracting and is not to be supplied by surmise or things equivocal in themselves.

3. Whether a mill is in good or bad order does not relate to an occult quality.

4. A false statement of a material matter will not overthrow a bargain unless the statement was the means of producing it.

5. Where parties treat on the basis of trust and confidence, the rule is to hold the party making the representations bound by them.

6. Such relation is never presumed in ordinary transactions where each may inform himself, then both the relation and deception must be proved to set aside an agreement.

November 17th 1869. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of Mercer county: No. 74, to October and November Term 1868.

This was an action of covenant, brought August 12th 1867, by E. D. Satterfield and Abraham F. Everhart, trading as E. D. Satterfield & Co., and David Edeburn against William F. Clark and Warren Pearson.

On the trial, April 24th 1868, before Trunkey, P. J., the plaintiffs gave in evidence an article of agreement made December 12th 1865, between David Edeburn and E. D. Satterfield & Co., of the one part, and W. F. Clark and Warren Pearson, of the other part; viz. :

"The said David Edeburn, E. D. Satterfield & Co., for the consideration hereinafter mentioned, do for themselves, their heirs and executors and administrators, covenant, promise and agree to and with the said Wm. F. Clark and Warren Pearson, their heirs and assigns, by these presents, that they shall and will on or before the first day of April 1868, grant, &c., unto the said Wm. F. Clark and Warren Pearson, their heirs and assigns, in fee simple, clear of all encumbrances, all that messuage or piece of land, &c., in the borough of West Middlesex, Mercer county, on which are erected a steam flouring-mill and tenement houses.

[Clark *v.* Everhart.]

"In consideration whereof the said Wm. F. Clark and Warren Pearson covenant with the said David Edeburn, E. D. Satterfield & Co., that they will pay unto the said David Edeburn, E. D. Satterfield & Co., the sum of $7250, in manner following, to wit: $2500 on the execution of this agreement; $2375 on the first day of April 1867; and $2375 on the first day of April 1868; with interest from the 1st day of January 1866; and the payment of the said several sums of money is declared to be a condition precedent to the execution of the deed or deeds of conveyance aforesaid."

The defendant made the first payment. This suit was brought for the second.

The defendants gave evidence by Robert Stewart that Edeburn told him he had an arrangement with W. F. Clark to sell the mill, and that Clark had written to Edeburn that he had a friend who wished to buy the mill. A letter being shown to witness, he said it was a letter which Edeburn authorized him to write, that Everhart had consented to it; witness understood that it was written to Clark as plaintiff's agent to sell; they were to give him $250 for making the sale. When the letter was written Clark resided at Meadville and Pearson at New Castle.

The defendants then, under objection and exception, read the letter as follows:

West Middlesex, Nov. 29 '65.

Wm. F. Clark, Esq.—Dear Sir:—Yours of the 27th inst. came to hand this day. We offered to sell our mill and house and lots adjoining for $8000, or the mill by itself for $7000, which we think at a very low price. It is doing very well, is in excellent order. If your friend wants the mill he can have it at the above price, that is, if taken within a week, if not taken in that time we will not be bound by this offer, as we want to make arrangements for the running of the mill for the winter.

Hoping to hear from you soon, we remain

    Yours, &c.          A. F. Everhart & Co.,
                                 Per Stewart.

Defendants then offered to prove that the mill was not as represented in the letter of the 29th November at the time it was bought by them, but that it required an expenditure of $1500 to put the same in excellent order. (In answer to question by the court, defendants' counsel say they have no further testimony in reference to representations or what passed at the making, or as inducing to the making, of the contract.)

Plaintiffs objected to the evidence offered because there is no evidence of misrepresentation, or of any misrepresentation made by plaintiffs inducing the contract which was made and in evidence.

[Clark v. Everhart.]

The offer was overruled, and a bill of exceptions was sealed.

The court (Trunkey, P. J.) withdrew the consideration of the letter from the jury.

The verdict was for the plaintiffs for $2704.42.

The defendants took a writ of error, and assigned for error:—

1. The court erred in not submitting the letter of Everhart & Co. to the jury as evidence that the purchase was made on the faith of its representations that the mill was "in excellent order."

2. In not admitting evidence to show how much it cost to put the mill "in the excellent order" the defendants in error had represented it.

*S. W. Dana* (with whom were *Foster & McDermitt*), cited McKean v. Wagenblast, 2 Grant 465; Fisher v. Worrall, 5 W. & S. 478; Spaulding v. Heges, 2 Barr 243; Miles v. Stevens, 3 Id. 21; Pennock v. Tilford, 5 Harris 456.

*W. Stewart* (with whom were *S. Griffith* and *J. H. Robinson*), cited Stubbs v. King, 14 S. & R. 206.

The opinion of the court was delivered, January 3d 1870, by

Thompson, C. J.—Assuming, for argument sake, that the letter which the court withdrew, after its admission in evidence, contained the assertion of a *fact* in regard to the mill being in excellent order, and not an *opinion* merely, it would be but a single step in raising the defence proposed, to wit: that the defendants purchased on the faith of its representations, and were deceived. This the latter asserted the letter would not show, for peradventure it was not read at all by Pearson, and may not have been discussed by either at the time of the purchase; and, peradventure they may have taken the opinions of others on the subject or examined for themselves. It must be borne in mind, that the learned judge only withdrew it after the counsel for the defendants below were asked, and answered that they had no testimony whatever to give to apply the letter to the result of the purchase, beyond the fact, that it had been written to Clark. It would therefore have been only a guess or surmise, that it had been the inducing cause of the purchase, and liable to be erroneous in the proportion of one possibility to a dozen of reasons why it was not so. This is not enough, on any settled principle. If false and fraudulent representations be alleged as the groundwork for avoiding a bargain, it must be shown that like poison it entered into, and mixing with, the vital essence of it, tainted and destroyed it. That must be proved by a just inference from what took place at or about the time of contracting, and is not to be supplied by surmises or things so equivocal in themselves as to be proof or not as the fancy might dictate. It might be by some imagined that these

[Clark *v.* Everhart.]

purchasers, although the letter was written with no idea that they intended to negotiate for a purchase themselves, they applied its assurances to themselves, and on its faith looked no farther but contracted; by others it might be readily believed that it was a representation only to induce people to look at the property and buy if they were suited; that it could hardly have been with a view to influence the defendants to purchase, as they were not in negotiation for it, and the information was drawn out by one of them as agent, and that it would be unreasonable to suppose that a purchase would be made amounting to so much money without examination or guaranty, if not examined, as to its condition; and many would also be likely to think that if the representation was the moving inducement, it was strange that the contract was closed at $750 less than asked, including commissions to one of the purchasers, unless other considerations besides the letter had brought about the result; these considerations show the utter worthlessness of the letter itself in proving the inducing cause of the contract. For such a purpose, if it cast light at all, it was a most uncertain light.

"Undoubtedly," says Gibson, C. J., in Fisher *v.* Worrall, 5 W. & S. 478, "a vendor may praise to the most extravagant extent qualities which are susceptible of inspection; but the misrepresentation of an *occult quality* in regard to which the vendee is not supposed to buy on his own judgment, would be followed by very decisive consequences." Whether a mill is in good or bad order, is not an occult quality. It is almost as susceptible of discovery by common observation as a farm, certainly so, by persons acquainted with machinery. The defendants may, for aught that appears, have been well acquainted with it, if not it was easy to be informed by others who were. In Phipps *v.* Buckman, 6 Casey 401, the rule is stated that even a false statement of a material matter will not overthrow a bargain unless the statement was the means producing it. "This is especially true," says Porter, J., "where the statement embodies the result of an opinion, and where the means of knowledge are equally accessible to both parties." Where parties treat on the basis of trust and confidence either as to occult qualities, or for any other reason, the rule is to hold the party making the representations bound by them; but that relation is never presumed in ordinary transactions, where each may inform himself. In such cases the relation and deception must both be proved to set aside an agreement. The letter here as the *causa causans* was without proof, and did not afford the inference; and, therefore, the contract was not to be affected by it. We do not regard Miles *v.* Stevens, 3 Barr 21, as shedding any reliable light on the question evoked here. Indeed, in its extent it has not been followed, as was said in Pennock *v.* Tilford, 5 Harris 456. We think the learned judge below administered the law

[Clark *v.* Everhart.]

accurately in rejecting the proof of the cost of repairs proffered, and in withdrawing from the jury the letter which had been read, and that the judgment must be affirmed.