# Amelia Edelman, R. M. Root and A. G. Saylor, Appellants, *v.* Samuel B. Latshaw.

*Sale—False representations—Rescission of contract.*

A false statement will not overthrow a contract of sale unless such statement was the means of inducing the sale, but when the parties treat on a basis of trust and confidence, the rule is to hold the party making the representations bound by them.

An executor sold stock at a public sale for a nominal sum. Subsequently a letter came into the hands of the executor addressed to the testator in which the writer offered a sum equivalent to $1,500 for the stock. The executor opened the letter, but did not forward it or communicate its contents to the purchaser of the stock. He, however, requested the purchaser to sell the stock to him, offering $25.00 for it, and stating his belief that the shares had no intrinsic value, but that he wanted them because his father had been so long a holder of them. The purchaser replied that if the stock had no value, and the executor wanted it on account of its having been in his father's name so long, he could have it for $50.00. Subsequently at a personal interview, the executor reiterated his statement and the purchaser said : " If that is what you want it for, I am willing to transfer the stock to you." The executor secured the stock for $50.00 and resold it for $1,500 to the person who had written him the letter. The purchaser subsequently discovered the fraud and brought suit against the executor. *Held*, that it was error to enter a compulsory nonsuit.

Argued Feb. 4, 1897.    Appeal, No. 17, Jan. T., 1897, by plaintiffs, from judgment of C. P. Montgomery Co., June T., 1894, No. 140, refusing to take off nonsuit. Before GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for deceit.

From the record it appeared that the suit was brought to recover in damages the value of 600 shares of stock of the New York and Middle Coalfield Railroad and Coal Company and certain other stocks which plaintiffs claim were acquired by defendant from them by fraudulent misrepresentations and deceit.

The facts of the case appear by the opinion of the Supreme Court.

The court entered a compulsory nonsuit which it subsequently refused to take off.

420     EDELMAN et al., Appellants, *v.* LATSHAW.

*Error assigned* was refusal to take off nonsuit.

*Montgomery Evans*, with him *Henry D. Saylor* and *Irving P. Wanger*, for appellants.—Where a vendor is induced to make the sale by misrepresentations of the purchaser, in respect to the material facts peculiarly within the knowledge of the latter, by which the seller is deceived to his injury, the sale is void, and no title passes : Hilliard on Sales, 432 ; 8 Am. & Eng. Ency. of Law, 794, 830 ; Livingston v. Iron Co., 2 Paige, 390 ; Matthews v. Bliss, 22 Pick. 48 ; Walters v. Morgan, 3 DeG. F. & J. 718 ; Kerr on Fraud and Mistake, 53, 74 ; Kintzing v. McElrath, 5 Pa. 467 ; Story on Sales, sec. 169 ; Birdsey v. Butterfield, 34 Wis. 52 ; Smith v. Countryman, 30 N. Y. 655 ; Jones v. Keene, 2 Moo. & R. 348 ; Simar v. Canaday, 53 N. Y. 298 ; Laidlaw v. Organ, 2 Wheat. 178 ; Smith, Kline & French Co. v. Smith, 166 Pa. 563 ; Ellis v. Andrews, 56 N. Y. 83.

If there be any question as to the defendant's meaning, or as to whether he intended to represent the value, it is for the jury : Homer v. Perkins, 124 Mass. 431 ; Simar v. Canaday, 53 N. Y. 298 ; Laidlaw v. Organ, 2 Wheat. 178 ; Story on Sales, sec. 166.

*N. H. Larzelere*, with him *E. L. Hallman*, for appellee.—It is well established that there is no relation of confidence between vendor and vendee : Eichelberger v. Barnitz, 1 Yeates, 307 ; Graham v. Pancoast, 30 Pa. 97 ; Hazlett v. Powell, 30 Pa. 297 ; Kintzing v. McElrath, 5 Pa. 467 ; Clark v. Everhart, 63 Pa. 347.

Misrepresentations as to value will not avoid a contract : Benjamin on Sales, sec. 561 ; Van Epps v. Harrison, 5 Hill, 63 ; Homer v. Perkins, 124 Mass. 431 ; Medbury v. Watson, 6 Metc. 246–259 ; Manning v. Albee, 11 Allen, 520 ; Veasey v. Doton, 3 Allen, 380 ; Brown v. Castles, 11 Cush. 348 ; Harvey v. Young, Yelv. 21 ; Baily v. Merrell, 3 Bulst. 94 ; Vernon v. Keys, 12 East, 632 ; Moore v. Turbeville, 2 Bibb, 602 ; Saunders v. Hatterman, 2 Ired. 32 ; Starr v. Bennett, 5 Hill, 303 ; 2 Leigh's Nisi Prius, 1079 ; Rockafellow v. Baker, 41 Pa. 319 ; Humphrey v. Haskell, 7 Allen, 497 ; 2 Kent Com. 486 ; Brown v. Leach, 107 Mass. 364 ; Graffenstein v. Epstein, 23 Kansas, 443 ; Harris v. Tyson, 24 Pa. 347 ; Butler's App., 26 Pa. 63 ; Phipps v. Buckman, 30 Pa. 401 ; Adams's Eq., 356.

There was nothing in the correspondence which ought to have prevented inquiry, or to induce appellants to recognize Latshaw in any other light than as trying to buy the shares for as little money as he could: Clapham v. Shillito, 7 Beavan, 146; Cooper v. Lovering, 106 Mass. 77; Mooney v. Miller, 102 Mass. 217.

OPINION BY MR. JUSTICE WILLIAMS, March 22, 1897:

This action was brought to recover damages for a deceit practiced by the defendant to induce a sale by the plaintiffs to him of certain shares of stock, and it presents an unusual state of facts. The defendant, Samuel B. Latshaw, was an executor of the will of his father, Daniel Latshaw. Among the assets that came into his hands as executor were seven hundred and fifty shares of stock in the New York and Middle Coalfield Railroad and Coal Mining Company, fifteen hundred shares of the Orion Silver Mining Company, and five hundred shares of the Montana Gold and Silver Mining Company. These stocks were considered worthless. They were offered by the executor at public sale and were sold to the plaintiffs who were the highest bidders at prices aggregating $11.40. Nothing was known at the time about the offices or books of either of these companies, and the stocks had no known market value. The sale was made in March, 1887. In September, 1891, a letter was written by C. R. Lindsey to Daniel Latshaw, the deceased former owner, inquiring if he still held the seven hundred and fifty shares of the New York and Middle Coalfield Railroad and Mining Company and stating that he could place these shares at $2.00 per share if the owner desired to part with them, though they had no market value. The defendant opened this letter and at once began a correspondence with Mr. Lindsey looking to the sale of the stocks to him for the price offered. He also wrote to Saylor, one of the plaintiffs, offering $25.00 for the stock, stating his belief that the shares had no intrinsic value, but that he wanted them because his father had been so long a holder of them. The plaintiffs replied to this letter saying, "If as you state the stock has no value and you want it on account of being in your father's name so long, you can have it for fifty dollars, though I do not care to sell it." He afterwards arranged to meet the plaintiffs, when he accepted their offer and

received six hundred of the shares, the certificate for the remaining one hundred and fifty shares having been mislaid so that it could not be delivered at the time.   At this interview, Saylor inquired of the defendant why he wanted the stock.   He replied "I want it as a relic of my father's effects.   It is intrinsically worth nothing, but he had it so long."   Saylor replied "If that is what you want it for, I am willing to transfer the stock to you."   The stock was transferred to him.   Within a few weeks the plaintiffs discovered the imposition that had been practiced upon them, tendered the $50.00 to the defendant and demanded the return of the stock.   This was refused.   A bill in equity was then filed asking the cancelation of the transfer by the plaintiffs and a decree requiring the return of the stocks. The stocks turned up in the hands of an innocent purchaser. For this reason and because an adequate remedy existed at law, the bill was dismissed.   This action was then brought, and it turns upon the validity of the sale by Saylor and his co-owners to Latshaw in October, 1891.   At the conclusion of the plaintiffs' case, in which all the facts above recited fully appeared, the learned judge of the court below entered a compulsory nonsuit, for which he gave five reasons which he stated thus :

"1. The alleged false representations as to value will not avoid the contract.

"2.  Plaintiffs did not rely upon the statement as to value.

"3. There was no evidence that defendant knew that the stock had any market value.

"4. Plaintiffs had investigated the matter and had as good an opportunity as defendant of ascertaining the condition of the company.

"5. The representations made by the defendant do not constitute such a fraud as would vitiate a contract."

The second of these reasons is a clear mistake of fact.   That the plaintiffs did rely on the defendant's statement that the stock had no value is clear from the conversation had before the stock was transferred to him.   At that time, Saylor said to Latshaw, "Now, Mr. Latshaw, I want to know what there is in the stock that you appear so anxious to have it at this time ? You laughed at me at the time I purchased it, and said it was not worth the paper it was written on.   Why do you want it ?

Latshaw made reply, " It is valueless ; it is intrinsicially worth nothing ; but I want it as a relic of my father's effects because he had it so long." Saylor then replied, " If that is what you want it for, I am willing to transfer the stock to you." In their letter to the defendant written a few days before the transfer, they expressly put their willingness to sell to him on his representation that the stock had no value. " If, as you state, the stock has no value, and you want it on account of being in your father's name so long, you can have it for $50.00, though I do not care to sell it." The third reason is unimportant. It was not the market value, but the actual value that the defendant knew and misrepresented in this transaction. He had Lindsey's letter, which did not belong to him, but to the owners of the stock, in his pocket, offering $1,500 in cash for these shares, when he stated to the owners, " this stock is valueless ; it is intrinsically worth nothing. I want it not for its value, for it has none, but for its associations with my father, and because of his long ownership." The market value under the facts of this case is immaterial. The actual value was $1,500 at least, and this he knew, because as executor of his father he had come into possession of a letter addressed to him as the former owner of these shares, and which it was his duty to forward to the actual owners who had succeeded to his father's title, and had a moral right, if not a legal one, to the information the letter contained. The same thing must be said of the fourth reason. It overlooks the actual situation of the parties in this case in the pursuit of a general principle which is not applicable. This is not the case of a purchase made by one dealing with a vendor having equal advantages and opportunities for knowledge with himself, but it is the case of one who has information intended for and belonging to the owner which he withholds from him. This really creates a sort of confidential relation between them. The executor who has made the sale to the plaintiffs with an offer in his pocket intended for the owners, and to the possession of which he has no claim as against them, goes to them to negotiate for the stocks. He not only withholds from them the letter which is theirs, but represents what he knows to be absolutely false both as to the value of their stock and his own reason for wishing to purchase it. The fourth reason like the second rests on a misapprehension of the facts. So far as the mere

matter of market value is concerned, it is possible the parties stood on common ground, but so far as the actual value is to be regarded, they did not. The defendant had the fullest knowledge through the letter of Lindsey, which really belonged to the owners of the stock, and which he improperly withheld from them, of what the shares could be sold for, while the plaintiffs were without any knowledge upon the subject.

The first and fifth reasons may be considered together. They raise the question whether the false representations made in this case by Latshaw were a fraud upon the plaintiffs. We recognize the rule quoted from Benjamin on Sales by the learned judge of the court below, and have no disposition to modify it. Both the purchaser and the seller must as a general rule exercise and rely upon his own judgment as to the value of the thing which is the subject of negotiation. The rule of caveat emptor applies to such sales, and the ordinary " dealer's talk " will not give rise to an action by the disappointed party. But there is a limit beyond which false representations as to collateral matters used as an inducement to the trade will vitiate the sale. Smith et al. v. Smith, 166 Pa. 563. So while it is true, as was held in Clark v. Everhart, 63 Pa. 347, that a false statement of a material matter will not overthrow a bargain unless the false statement was the means of inducing it, yet when parties treat on a basis of trust and confidence the rule is to hold the party making the representations bound by them. Latshaw had exact information that the stock was worth at least $1,500. This information belonged to the owners of the stock. He withheld it from them, and represented that the stock had no intrinsic value whatever, but was absolutely valueless. The falsehood was relied upon by the plaintiffs, and induced a sale of the stocks to him for $50.00 which he knew at the time to be worth $1,500. This was a gross fraud, perpetrated by means of the withholding of Lindsey's letter from the parties to whom it belonged, and the substitution therefor of his own false and fraudulent representation that the stock had no value. Such a representation is by no means a case of " dealer's talk," or of the ordinary depreciation of another man's goods in order to secure them at the best price possible. Nor yet is it the case of a simple falsehood told to induce a sale. It is a falsehood told by one who by virtue of his possession of their letter was bound to

tell the owners the truth.  He could not suppress an offer in tended for, and belonging to, the owners of the stock and knowingly and wilfully misrepresent its value to them to induce a sale to himself for a grossly inadequate price.  This is not up to the low level of business morality, and ought not to be tolerated.

The judgment is reversed and a new venire ordered that the case may be fully heard before a jury.