Lake, Appellant, *v.* Thompson.

Argued October 9, 1950.   Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

*Edward A. Tobias,* with him *Tobias & Weilersbacher,* for appellants. .

*John L. Miller,* with him *Duff, Scott & Smith,* Fred *C. Houston, Jr.* and *Houston & Houston,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, January 2, 1951:

Elsie S. Lake and Albert B. Lake, her husband, appellants, filed their bill in equity against Wilbur E. Thompson and Hazel, his wife, and John R. Smith and Fred C. Houston, appellees, to effect cancellation of a deed, purchase money mortgage and accompanying bond, averring fraudulent representations by Wilbur E. Thompson in the sale of a house and lot in the Borough of Ben Avon by him and his wife to appellant, Elsie S. Lake. Smith and Houston were attorneys for the respective parties and are not charged with any fraud. They are joined for the reason that they hold jointly in escrow a portion of the purchase price. Preliminary objections to the bill averring appellants' failure to allege sufficient facts to establish fraud were sustained by the court below. This appeal followed.

The bill contains the following allegations: Wilbur E. Thompson has been in the real estate business for many years. He and his wife became owners of the property involved by devise under the will of Jennie M. Curtis. Thompson on September 20, 1948, met Mrs. Lake on the premises, 7000 Perrysville Avenue, Ben

Avon, for the purpose of attempting to effect a sale of the property to her. He knew at that time that this was her first and only view of the property and she was compelled to return immediately to her employment in New York.

Thompson, in the course of their conversation, made the following material representations to her: The heating plant, plumbing and electric wiring were in good condition. There was sufficient land to sell a 60 foot lot off of the property, and for which lot an offer of $2,000 had already been made. A Ben Avon Borough ordinance required 60 foot frontage on residential lots. An adjoining dilapidated house which detracted greatly from the value of the property in question had been condemned by the Borough and would shortly be torn down. A large and unsightly water tank in the kitchen with numerous pipes connected thereto could be removed since a tank in the cellar supplied all necessary hot water. The cellar was dry and in good condition.

The bill further averred: Each of the foregoing representations was untrue; the heating plant was obsolete and practically useless; the plumbing was antiquated and neither sink nor toilet could be operated; the electrical system contained loose and broken connections and was dangerous; the roof was old and in wet weather water ran down into the bay window of the house and caused water to pour into the cellar, endangering the foundation; the gutters on the roof were improperly installed, nails were driven through them, all of which could not be observed from the ground in dry weather; if 60 feet were to be sold off the side of the property, the kitchen to the residence would also be sold off; there was no borough ordinance requiring a 60 foot frontage of residential properties; no offer had ever been made for the purchase of the 60 foot lot; the adjoining house

had never been condemned by the borough; the water tank and pipes in the kitchen were an integral part of the antiquated water system and are not superfluous; the cellar is not dry, but water pours into it with every rain or snow, particularly through a large hole adjoining the cellar door, which hole at the time of the visit to the property was hidden behind a coal pile.

Other asserted misrepresentations were that a $7,000 bank purchase money mortgage on the property could and would be procured by Thompson for Mrs. Lake; that the garage was a two-car garage for which $10 per month could be secured as rent; the driveway was gravel based; and, that the house was not over 47 years old.

Further negotiations were conducted entirely by correspondence and ultimately resulted in execution of a written agreement of sale signed by appellants and later executed by Thompson and his wife on November 12, 1948. After a title search was made by Houston as attorney for Mrs. Lake, settlement was made December 10, 1948, at which time the deed was delivered to her, purchase money bond and mortgage executed by Mrs. Lake and her husband, and an escrow agreement entered into whereby cash consideration of $4,000 was turned over to the two attorneys to be held jointly by them for payment of debts not of record and inheritance taxes against the estate of Jennie M. Curtis, the remaining balance, if any, to be paid to the vendors after the expiration of one year.

Mrs. Lake made two payments on account of the mortgage for the months of January and February, 1949. She refused to make further payments because of alleged fraudulent representations. Her requests for redress were refused by the Thompsons and this proceeding was instituted. The court below held that the representations merely constituted expressions of opinion and concerned matters obvious to casual in-

spection. With regard to the averments of the $7,000 purchase money mortgage, the two-car garage and the rent to be received therefrom and the age of the house, the court below was unquestionably correct. The remaining averments of the bill, however, assuming them to be true, were sufficient to require that the requested relief be granted.

The representations were alleged to have been fraudulently made with the intention that they be acted upon by Mrs. Lake, with knowledge of their falsity, and that they were relied upon to the detriment of the purchaser. In these circumstances, the bill sufficiently averred facts which, if proved, warranted a rescission of the entire transaction. See Restatement, Contracts, sections 470-471-476.

Appellees contend, however, that the relief prayed for could not be granted for the reason that the untruth of the matters represented was susceptible of discovery upon inquiry between the date when Thompson and Mrs. Lake visited the property and the date when the sale was consummated, almost three months later. It is said that the bill does not aver circumstances which prevented Mrs. Lake as a reasonably prudent person, from ascertaining the condition of the house or the truth of the representations. This contention cannot be sustained. It cannot be said as a matter of law that the representations were such that the truth thereof could readily be determined by further inspection of the premises by one not skilled in the knowledge of home construction and plumbing.

The condition of a house as regards plumbing, electric wiring and heating is not generally ascertainable upon view. The same is true as regards a roof and gutters. Consummation of a purchase and sale should not be dependent upon the fortuitous circumstance that a purchaser be available when rain or snow happens

to fall so that he can inspect the roof and cellar to determine whether the roof is watertight and the cellar dry. Physical surroundings of a home are also of importance to a purchaser. Thompson's statement that the dilapidated adjoining house would be torn down might be regarded as an expression of opinion. Nevertheless, when such representation is considered together with a statement of fact that the property had been condemned by the borough, opinion and fact become inseparably blended. Mrs. Lake was not required to examine public records to ascertain whether the house had been condemned: *Suraci v. Ball,* 160 Pa. Superior Ct. 349, 51 A. 2d 404, and cases cited therein; 23 Am. Jur., Fraud and Deceit, section 163. The representation that an offer of $2,000 had been made for a 60 foot lot which could be sold from the premises is clearly a misrepresentation of existing fact. See *Sutton v. Morgan et al.,* 158 Pa. 204, 27 A. 894.

"Undoubtedly a vendor may praise to the most extravagant extent, qualities which are susceptible of inspection; but a misrepresentation of an occult quality, in regard to which the vendee is not supposed to buy on his own judgment, would be followed by very decisive consequences.": *Fisher v. Worrall,* 5 W. & S. 478. Clearly, the misrepresentations made were not of such nature that the truth or falsity thereof could readily be determined. Particularly is this true where, as here, Thompson knew that Mrs. Lake was relying upon his representations and that she did not live in the community and did not have unlimited opportunity for detailed inspection, but instead was required to negotiate the sale by means of correspondence. It is immaterial that some of the false representations did not separately or collectively constitute a basis for rescission. It is sufficient if there were any misrepresentations of material facts made with knowledge

of their falsity and the intention that they should be relied on, which constituted a substantial factor in inducing the purchase. See *Neuman v. Corn Exchange National Bank and Trust Company,* 356 Pa. 442, 445, 51 A. 2d 759.

Appellees rely upon *Zitek v. McCabe,* 92 Pa. Superior Ct. 422, and a statement contained in *Emery v. Third National Bank of Pittsburgh,* 308 Pa. 504, 512, 162 A. 281. These cases are clearly inapposite. In the former the representation relied upon was the general statement that the house was in perfectly good condition. The conditions complained of were obvious upon the most casual exterior inspection. The vendee lived on the opposite side of the street, six or seven houses below the house in question. The Court said (p. 424) : "The representations were not definite. No particular statements as to any part of the premises. Merely a general assertion that the house was in good condition and this carried with it no guarantee. It was rather an expression of opinion." The latter case was an action in trespass for deceit. The misrepresentations related to the value of a business purchased. The portion of the opinion relied upon at page 512 is the following quotation from *Slaughter v. Gerson,* 13 Wallace 379 : " 'Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor's misrepresentations'." In that case it was held that where plaintiff, a mechanical engineer, discussed with a bank president the affairs of a coffee company with which the latter was fully familiar, it could not be held as a matter of law that the plaintiff did not have the right to rely upon the statement of the latter. This Court said (p. 513) : "When the [bank presi-

dent] made a statement about the assets of the coffee company, which company the bank had long controlled, Emery had a right to assume that this bank president knew the exact facts as to the financial condition of the company and would disclose them. In Bower v. Fenn, et ux., 90 Pa. 359, a vendee who had no knowledge of the drug store business relied upon the truth of the vendor's statement as to the value of the store and the vendor permitted the vendee to contract with him on the faith of his statements of value. This court held that the vendee could set up the falsity of the vendor's statement as a defense in an action of ejectment on a mortgage given for a portion of the purchase money. See also Fisher v. Worrall, 5 W. & S., 478, and Edelman et al. v. Latshaw, 180 Pa. 419, 36 A. 926." In *Emery v. Third National Bank of Pittsburgh*, 314 Pa. 544, 171 A. 881, a second appeal, this Court stated (pp. 547-8, quoting from 12 R.C.L. p. 359) : " 'In addition to actual reliance, a party asserting fraud of a false representation must have had the right to rely thereon; wherefore the representation must have been made to him either directly or indirectly, and must have been of such a nature that it was reasonably calculated to deceive him, and to induce him to do that which otherwise he would not have done. . . . Where the means of obtaining information are not equal, the positive representations of the person who is supposed to possess superior means of information may be relied on'." The Emery case, rather than supporting appellees, negatives their contention for there, as here, the party deceived had no reason to doubt the veracity of the party making the representations. No suspicions were aroused which would make mandatory a thorough or detailed examination of the property to determine the truthfulness of the representations. See also *Mahaffey v. Ferguson*, 156 Pa. 156, 27 A. 21.

There is nothing before this Court which even remotely suggests that Mrs. Lake had reason to doubt any of the material representations made by Thompson. She could reasonably rely upon the representations made to her regarding those facts which were not open and notorious upon a casual inspection. See *Siskin v. Cohen, et al.*, 363 Pa. 580, 70 A. 2d 293. The law leans toward protecting even the foolishly credulous against the machinations of those who would defraud. *Emery v. Third National Bank of Pittsburgh*, 314 Pa. 544, 548, 171 A. 881; *Sutton v. Morgan*, supra; *Suraci v. Ball*, 160 Pa. Superior Ct. 349, 51 A. 2d 404; *Ashland Towson Corp. v. Kasunic*, 110 Pa. Superior Ct. 496, 168 A. 502. The court below was in error in sustaining the preliminary objections to the bill in equity.

Order reversed with a procedendo.