## Gerhart Estate

*Charles Blasband*, for accountant.

*Wisler, Pearlstine, Talone & Gerber*, for claimant.

TAXIS, P. J., March 12, 1956.—Testator died on January 8, 1954, leaving a will which gave his entire estate to his wife, Lulu V. Gerhart, the executrix. The account shows a balance for distribution of $12,655.57, composed of real estate situate at 122 Forrest Avenue, Ambler, inventoried at $10,000, shares of stock as set forth on page 2 of the account valued at $709.05 and cash.

The transfer inheritance tax has been paid.

Accountant listed an unpaid claim of J. W. Craft & Sons, Ambler, in the amount of $972.79. This claim was not admitted by the accountant, was not pressed by the creditor at the audit, and is herewith dismissed.

A claim was filed by North Wales Granite Company in the amount of $464 representing loss of profits resulting from cancellation of a contract to buy a tombstone for decedent's grave. Claimant has based its action on a written contract for the sale of a tombstone entered into by Lulu V. Gerhart, as executrix, for a consideration of $930. The accountant has resisted this claim, alleging fraud in the inducement as a defense. During the preliminary negotiations with one Kenneth

Beck, agent and salesman for the North Wales Granite Company, which culminated in the contract in question, Mrs. Gerhart indicated to Mr. Beck that she was interested in obtaining a Rock of Ages stone. Immediately an ambiguity arose. The Rock of Ages Corporation sells two distinct items: First, the completed polished monument marked with their seal and made from granite obtained from their quarries (hereafter referred to as Rock of Ages finished monument); secondly, the unfinished blocks of granite quarried from the same mines yielding the stone for their finished monuments, but sold in a rough, unpolished state, and without the imprint of the Rock of Ages seal (hereafter referred to as Rock of Ages granite stock).

After some preliminary discussion with Mr. Beck, it developed that Mrs. Gerhart was interested in a monument made from material which comes from Rock of Ages Corporation. Mr. Beck then explained that he could not furnish a Rock of Ages finished monument, for this was an item distributed exclusively through authorized dealers of which Mr. Beck's firm was not one. The veracity of this portion of Mr. Beck's explanation is undisputed. However, with regard to the Rock of Ages granite stock, Mr. Beck stated: (1) That this material was unavailable to him, and (2) that Barre granite select no. 1, which was available to him, was of identical quality as the Rock of Ages granite stock. The veracity of this portion of Mr. Beck's explanation to Mrs. Gerhart is disputed.

The uncontradicted testimony of the expert witness, Mr. Ferrari, called on behalf of the estate, establishes the falsity of Mr. Beck's utterance concerning the quality of the two stones being identical. Mr. Ferrari explained the Rock of Ages granite is the best quality and highest priced stone quarried in Barre, Vt. Other stones (which would include the Barre granite

select no. 1) are graded below the standard of the Rock of Ages material, which was described as ". . . the best quality stone for memorials quarried in Barre, Vt.".

As to the availability of Rock of Ages granite stock, Mr. Beck's testimony establishes that he told Mrs. Gerhart that the Rock of Ages finished monument was not available in the area because only certified dealers authorized to sell such monuments were permitted to distribute them, that there were no certified dealers in the area. This portion of Mr. Beck's statement was true. However, he continued to explain to Mrs. Gerhart that the Rock of Ages granite stock was not available to him. Mr. Ferrari testified that Rock of Ages granite is available to any dealer. In addition to being factually incorrect, Mr. Beck's statement, following his declaration that the Rock of Ages finished monuments were not available in the area, was misleading in that it inferred Rock of Ages granite stock also was not available. True, Mr. Beck carefully qualified his statement regarding the availability of the Rock of Ages granite stock by saying that it was not available to him, but he made no effort to erase the natural implication that the granite stock, like the finished monument, was also not available to anyone in the area. In fact, as pointed out above, any dealer in the area, including Mr. Beck's own firm, could have availed himself of Rock of Ages granite stock, but as Mr. Beck admitted, "I did not point-blankly tell her that Rock of Ages granite is available, no".

Mrs. Gerhart's decision to contract for a substitute other than Rock of Ages granite was induced by her reliance on the above misrepresentations of Mr. Beck, for it was not until these misrepresentations were made that she retreated from her initial request for a Rock of Ages stone and determined to accept a substitute, namely, a Barre granite no. 1 select.

"Where a party is induced to enter into a transaction with another party that he was under no duty to enter into by means of the latter's fraud or material misrepresentation, the transaction is voidable as against the latter . . .": Restatement of the Law of Contracts, §476, cited with approval in Lake v. Thompson, 366 Pa. 352, at page 356. The Restatement further defines a misrepresentation as being a material one if it ". . . would be likely to affect the conduct of a reasonable man with reference to a transaction with another person . . .": §470(2).

There can be no doubt that these misrepresentations substantially affected Mrs. Gerhart's conduct in this transaction. Furthermore, there is a presumption of reliance in such circumstances: McClellan Estate, 365 Pa. 401; Restatement, Contracts, §479. The fact that Mr. Beck's representations might have been made innocently does not render the contract binding on the estate. "Misrepresentations . . . even where innocently made, if material, are nevertheless grounds for rescission": LaCourse v. Kiesel, 366 Pa. 385; Restatement, Contracts, §476, comment (b).

After careful consideration of all the evidence, argument and briefs of counsel, I conclude that because of the material misrepresentations on the part of the agent of the claimant to induce the executrix to sign the contract, the claim of North Wales Granite Company is unenforceable and without merit and is herewith dismissed. In light of this disposition there remains no necessity to discuss the defense raised by the estate, namely, that the contract is void as being a "Sunday" contract.

The balance for distribution is awarded as suggested under the last paragraph of the petition for adjudication.

The account is confirmed, and it is ordered and de-

creed that Lulu V. Gerhart, executrix, as aforesaid, forthwith pay the distributions herein awarded.

Counsel for accountant shall file a schedule of distribution in duplicate.

And now, March 12, 1956, this adjudication is confirmed nisi.