## Connelly v. Weber

*William A. Goichman,* for plaintiffs.

*James D. McCrudden,* for defendant.

FLOOD, P. J., November 18, 1959.—Plaintiffs filed a bill in equity seeking rescission of a deed to a single residence purchased from defendant Wilmer S. Weber. They contend that the vendor falsely and fraudulently represented the house to be in good condition and in need only of minor repairs that could be done by anyone handy with tools, whereas the house is presently riddled by termites, in a weakened and generally run-down condition and defendant knew of such condition and made efforts to conceal some of the defects.

Defendant, a real estate broker and former owner of the premises in question, denies having made representations concerning the condition of the house. He also disclaims knowledge of the existence of termites and asserts negligence on the part of plaintiffs by virtue of their failure to fully inspect the premises.

The issues are whether defendant made a material misrepresentation and whether plaintiffs justifiably relied upon it to their detriment.

### Findings of Fact

1. Defendant, a real estate broker, became the owner of premises 4651 North Fifth Street, Philadelphia, in January 1954.

2. Defendant entered into a lease-purchase agreement for the property on June 24, 1955, with Mr. and

Mrs. Edward Morgan. Pursuant to this agreement several beams were replaced in the house.

3. The house was vacated by the Morgans in May 1958, and continued to be owned by Weber.

4. The cellar of the house has been infested by termites since 1953.

5. The termite condition was visible to the naked eye of a layman prior to the purchase of the house by plaintiffs.

6. The wife-plaintiff had had prior dealings with defendant.

7. Plaintiffs and defendant entered into an agreement of sale on July 2, 1958, under which plaintiffs agreed to purchase the house for $4,100. Settlement was made thereunder on July 24, 1958.

8. Prior to the purchase, wife-plaintiff inspected the house with defendant. At that time the cellar window glass was broken and the windows were covered with wood, and the cellar light was out of order.

9. Defendant represented to the wife-plaintiff that the house was in good condition, in need of only minor repairs that could be done by anyone handy with tools.

10. Plaintiffs relied on this statement by defendant in making the purchase.

11. Defendant made this statement without knowledge of the existence of the termite condition, but conscious that he was without any knowledge either way on the subject.

12. Plaintiffs also relied on a Veterans' Administration approval of the purchase price. A second appraisal was made for the Veterans' Administration two months later by another appraiser who reported many defects in the property not reported by the first appraiser and stated that the application should have been rejected.

13. The husband-plaintiff never inspected the interior of the house prior to its purchase.

14. The husband-plaintiff, prior to the purchase, heard a rumor that the house was infested by termites, but he did not credit it.

15. When plaintiffs, on or about July 31, 1958, took possession of the house, there were rotten beams in the cellar and the second floor was sloping from three to four inches.

16. At that time, there was a 36-inch hole in the front foundation wall, charged electric wires were suspended from the ceiling, the roof leaked and boards and window sills at the top of the house were rotted.

17. Plaintiffs discovered the termite condition in the early part of August 1958.

18. Plaintiffs went to defendant's office to notify defendant about the termite condition the day they discovered it, or the day after, but defendant was on vacation. Plaintiffs did notify defendant of the condition of the house about one month after they moved in.

19. The settlement charges were $292.47.

20. Plaintiffs paid a water meter charge of $60.

21. Plaintiffs had one room papered at a cost of $40 and installed storm windows at a cost of $265.

22. Plaintiffs paid $200 for a new heater.

23. Suit to rescind the sale was instituted on January 9, 1959.

### Discussion

The testimony offered in this case was markedly conflicting. From our observation of the witnesses and consideration of the evidence it does not appear to us that plaintiffs have proved by clear, precise and indubitable evidence (Gerfin v. Colonial Smelting & Ref. Co., Inc., 374 Pa. 66 (1953) ) that defendant made consciously false statements. However, he did make a material misrepresentation when he told plaintiffs that the repairs required in the house were "minor" and could be corrected by anyone handy with tools.

Although there is no satisfactory proof that defendant knew of the existence of the termite condition at that time, despite the fact that he had owned the property for several years, his lack of knowledge does not absolve him from liability. Section 526 of the A. L. I. Restatement of the Law of Torts notes that: [a] misrepresentation in a business transaction is fraudulent if the maker . . . (b) knows that he has not the confidence in its existence or non-existence asserted by his statement of knowledge or belief, or (c) knows that he has not the basis for his knowledge or belief professed by his assertion."

Section 476(1) of the A. L. I. Restatement of the Law of Contracts suggests that when "a party is induced to enter into a transaction with another party that he was under no duty to enter into by means of the latter's fraud or material misrepresentation the transaction is voidable as against the latter. . . ." Comment *b* of that section adds that: "[i]nnocent material misrepresentation though not accompanied by negligence has the same effect as fraud in rendering a contract or discharge voidable."

Pennsylvania has adopted the principle that lack of knowledge of the truth of a representation made by a party to a contract is ordinarily irrelevant. In La-Course v. Kiesel, 366 Pa. 385, 390 (1951), it was stated that: "[a] material misrepresentation of an existing fact confers on the party who relies on it the right to rescind whether the defendants here actually knew the truth or not, especially where, as here, they had means of knowledge from which they were bound to ascertain the truth before making the representation. Misrepresentations made under such circumstances *are* fraudulent and have been variously called implied, constructive or legal fraud or fraud in Equity . . . but even where innocently made, if material, are nevertheless grounds for rescission . . ."

As a matter of fact, we do not believe that the misrepresentation was entirely innocent. Defendant himself testified that he had not seen the basement of the premises. He must, therefore, have been conscious that he did not know whether or not his representation was true. Making this statement without having examined the premises appears to us to amount to the recklessness referred to in Warren Balderston Co. v. Integrity Trust Co., 314 Pa. 58 (1934), and Polaski v. Levin, 176 Pa. Superior Ct. 370 (1954).

Plaintiffs, to establish their case must, of course, show justifiable reliance on the misrepresentation by the recipients: Neuman v. Corn Exchange National Bank and Trust Company, 356 Pa. 442, 450 (1947). The degree of investigation required of plaintiff varies with the facts of each case. In the present circumstances, the wife plaintiff had dealt with defendant on a previous occasion and her return to deal with him suggests that she had confidence in him. At the time of her inspection prior to the sale, the windows in the cellar were covered and the artificial light was not in working order. Although defendant suggested the house was available for inspection at any time, he made no effort to provide sufficient light to make inspection feasible. It doubtless would have been unwise to descend to the cellar under these conditions. Indeed defendant must have thought so for he refrained from inspecting that part of his property himself.

Although another buyer might have demanded that light be provided, "[t]he law leans toward protecting even the foolishly credulous against the machinations of those who would defraud": Lake v. Thompson, 366 Pa. 352, 360 (1951). And we believe this equally true in the case of a reckless misstatement which our cases treat as equivalent to fraud if it involves a material matter. Even if there were negligence on the part of plaintiffs, it would not appear to be a defense to the

harm wrought by the reckless misstatement of defendant.

In the absence of evidence as to the rental value of the premises, we assume that defendant considers such value to be no higher than the interest on the consideration money paid by plaintiffs.

### Conclusions of Law

1. Defendant made a material misrepresentation about the condition of the premises in a reckless manner and was conscious that he did not have the knowledge necessary to form a basis for his assertion.

2. Defendant's reckless misrepresentation induced plaintiffs to enter into the agreement.

3. Plaintiffs are not precluded from recovery by their own negligence.

4. Defendant's conduct made the agreement voidable at the option of plaintiffs.

5. Plaintiffs were sufficiently prompt in making known their desire to rescind.

6. The parol evidence rule does not prevent the introduction of evidence that the agreement was fraudulently induced.

7. The prayer of complainants for rescission is granted.

8. Plaintiffs are entitled to return of the consideration money paid for the premises in the sum of $4,100.

9. In view of the fact defendant has offered no evidence as to the rental value of the premises, we assume that the rental value is equivalent to the interest on the consideration money.

10. Plaintiffs are entitled to the recovery of $857.47 which they expended for the betterment of the property.

The parties will submit a form of decree.