**Della Penna v. Swartley**

*C. Blasband*, for plaintiffs.

*Joseph J. Hennessey*, for defendants.

DANNEHOWER, P. J., May 25, 1960.— . . .

*Discussion*

Plaintiffs have brought their complaint in equity as vendees of real property, seeking rescission of the sale of the premises to them by defendants on the grounds of false and fraudulent representations and concealment. They also request the chancellor to direct the return of the purchase price of $13,500, together with costs of settlement and costs of repair to, and protection of, the premises. Defendants' answer denies that any such representations and concealment were made and asks dismissal of the complaint.

The elements which plaintiffs must show to entitle them to the equitable relief of rescission have been stated many times in our cases: DeJoseph v. Zambelli, 73 Montg. 434 (1957), affirmed per curiam, 392 Pa. 24 (1958). It was there stated that fraud in this con-

text means a misrepresentation known to be such, a concealment, or an unprivileged non disclosure: Restatement of Contracts, §471. Misrepresentation has been defined as "any manifestation by words or other conduct . . . that, under the circumstances, amounts to an assertion *not* in accordance with the facts . . ." Restatement of Contracts, §470.

Fraudulent representations or concealment render the transaction in question voidable without regard to their materiality; that is, they need not be the sole inducing cause of the transaction: DeJoseph v. Zambelli, supra. Innocent misrepresentation, on the other hand, must be material to make the transaction voidable: DeJoseph v. Zambelli, supra.

In either case, the complaining party must have relied on the representation of the other party to the damage of the former: LaCourse v. Kiesel, 366 Pa. 385 (1951).

The complaining party has no right to rely on mere expressions of opinion, where both parties have equal means of information: Zitek v. McCabe, 92 Pa. Superior 422 (1928). Nor can the complaining party be said to rely upon the misrepresentations of the other when the former has had an opportunity to make a complete personal examination of the subject matter of the transaction: Zitek v. McCabe, supra.

In the case presently before the chancellor, only the alleged representations and concealment occurring before November 22, 1957, the date of signing the agreement of sale, can be considered. This follows from the requirement that the transaction must have been entered into by plaintiffs in reliance on the alleged acts and omissions of defendants.

Prior to that date, the testimony and exhibits show the following representations or concealment made by defendants:

1. The printed words, "Excellent physical condition," in the handout prepared by the Multiple Listing Service from information supplied by defendant-husband through his agent, Bearoff.

2. The representations to plaintiffs by the agent, Bearoff, on their first visit to the property that the house was in excellent condition and that defendants' sole reason for selling was their desire to live nearer to the places of employment of Mrs. and Miss Swartley.

3. The representations to plaintiffs to the same effect by Mrs. Silver, a Bearoff employe, on their second visit to the premises, coupled with the statement that the house had been well built by the present owner.

4. The cluttered or overfurnished condition of the cellar and other rooms of the house which hindered examination of the interior walls and floors.

5. The patching or replastering of interior and exterior cracks in the walls by defendant-husband, which cracks are the same as those which reopened and enlarged after plaintiffs entered into possession.

It is settled law that the representations of an agent or his employe, while acting within the scope of their employment, are binding on the principal. Defendants do not contend that Bearoff was not their authorized agent for the sale of these premises, nor that Mrs. Silver was not an employe of Bearoff at all the times in question. It is also clear from the testimony and exhibits, and from the nature of the real estate business, that the information and representations passed on by these persons had their source with defendants.

It is true that plaintiffs may not justifiably rely on mere expressions of opinion, "dealer's talk," or "puffing," as fraudulent misrepresentations: Warren Savings Bank & Trust Co. v. Foley, 294 Pa. 176 (1928) ; Zitek v. McCabe, 92 Pa. Superior 422 (1928). However, when such statements or representations are

made by one who has special means of knowledge, they may constitute fraud: Edelman v. Latshaw, 180 Pa. 419 (1897) ; Lake v. Thompson, 366 Pa. 352 (1951).

In the case at hand, plaintiffs were informed that the house had been built by defendant-husband, and the latter admits that he did act as general contractor in its construction, supervising the work and doing much of it himself. It is especially significant that defendant-husband made the excavation for and installed the foundation footings for these premises. He also admits that he had previously built two other houses for himself and his family.

The chancellor does not find it difficult to believe that plaintiffs, a young married couple with no knowledge of the construction business, put more reliance on the statements of a reputed owner-builder than they would have in those of a vendor without these qualifications. The testimony of defendant-husband reveals that, while it was not his vocation, he had considerable knowledge of the mechanics of good construction practice.

This fact distinguishes the case of Zitek v. McCabe, supra. The vendor in that case appears to have had no special qualifications to add veracity to her statements. In addition, plaintiff, Anna M. Zitek, lived almost across the street from the instant house and could readily have inspected the exterior thereof, on which the defects complained of were easily visible to a layman's eye. In the case at bar, the testimony reveals that the repaired cracks which later reopened were not ascertainable through examination by one not skilled in the construction business.

More nearly in point is Lake v. Thompson, supra, where the Supreme Court said:

"It is said that the bill does not aver circumstances which prevented Mrs. Lake as a reasonably prudent

person, from ascertaining the condition of the house or the truth of the representations. This contention cannot be sustained. It cannot be said as a matter of law that the representations were such that the truth thereof could readily be determined by further inspection of the premises by one not skilled in the knowledge of house construction and plumbing": At page 356.

The chancellor may consider the age and inexperience of plaintiffs in determining the reasonableness of their reliance on defendants' representations: Emery v. Third National Bank of Pittsburgh, 314 Pa. 544 (1934). The testimony reveals that plaintiffs were a young couple, married about a year and one-half, who had no experience in either the purchase of real estate or the principles and practices of the construction business.

In addition to the representations made to them as to the condition of the premises, they were told that defendants really did not want to move away from this house and its environment, but that the necessities of convenience to employment required it. The record is not positively clear that this representation was false. The testimony does show that the address to which defendants and their daughter moved is more distant from the employment location in question than was the West Conshohocken address. Witnesses for plaintiffs also testified that the wife-defendant never expressed a desire to move to them, and that she was surprised when the house in question was put on the market.

The two persons who could have made this situation clear, the wife-defendant and defendants' daughter, were not called as witnesses and subjected to cross-examination. While the chancellor does not speculate on the reasons why defendants' counsel did not call these witnesses, in the absence of their testimony, he accepts the inferences raised by plaintiffs' evidence.

It is clear that such statements by a reputed owner-builder were calculated to further convince plaintiffs of the wisdom of their purchase of the property. Their reliance thereon was reasonable.

Plaintiffs also allege fraudulent concealment of the defects in the instant structure of which defendants were aware. Such concealment arises in the record in two particulars: (1) The "cluttered" or "over-furnished" condition of the interior of the house, and (2) the patching or replastering of known cracks on both the interior and exterior walls.

As to the first, the chancellor cannot conclude that defendants intentionally installed furnishings and fixtures so as to deceive plaintiffs. So long as the quantity of furniture was not so great as to prevent any examination of the interior of the house, its installation is purely a question of taste.

On the other hand, the chancellor must conclude that, since plaintiffs were forced to examine the premises in the condition created by defendants, plaintiffs made a reasonable inspection of the interior. Unless their suspicions were aroused, they were not required to shift heavy furniture or remove floor coverings to seek out defects.

The second element of concealment raises more serious questions. The testimony shows that defendant-husband employed a workman to cover exterior walls with the finish coat of stucco in the spring of 1956, that some cracks developed in this finish coat and that defendant-husband repaired these cracks in the summer of 1956, according to defendant-husband and one other witness, or in the spring of 1957, according to a third witness. In view of this conflict the chancellor, has not made a finding of fact as to the date the repairs were made.

In the view the chancellor takes of this aspect of the case, this discrepancy in time is not material. It is clear

that the cracks which developed were larger, both in width and length, than the "hairline" cracks which would develop from too rapid drying of the stucco coating. As such, when coupled with the interior defects which have been found, they revealed to defendant, as a builder of some experience, the structural defects in his dwelling. Cognizant of these danger signals, his skillful job of repairing the cracks, coupled with later representations that the premises were in excellent condition, constitutes concealment calculated to deceive: DeJoseph v. Zambelli, supra.

The chancellor is not impressed by the fact that the patching remained intact until plaintiffs had entered into possession. The fact that defendants insisted upon selling the premises in the latter part of 1957, even when informed that a better price could be obtained in the spring of 1958, leads to the inference that they feared the heaving of another winter's frosts would reopen the repaired areas.

Consideration of all the evidence in this case leads to the conclusion that plaintiffs have shown by a preponderance of the credible proof the elements necessary to sustain this suit for rescission of the sale of these premises, return of the purchase price and recovery of costs and expenses incident to settlement and necessary to repair and protect the premises. . . .

And now, May 25th, 1960, in view of the foregoing findings of fact and conclusions of law, it is ordered, adjudged and decreed, and the prothonotary shall enter the following

### Decree Nisi

1. The written agreement of sale, dated November 22, 1957, for the purchase and sale of premises located on New DeHaven Street, West Conshohocken, Montgomery County, between plaintiffs and defendants, having been properly rescinded by plaintiffs, is hereby declared rescinded.

2. Plaintiffs, Frank V. Della Penna and Nancy M. Della Penna, his wife, are hereby directed to reconvey the premises described in the complaint, being located on New DeHaven Street, West Conshohocken, Montgomery County, to defendants, Leon R. Swartley and Mildred M. Swartley, his wife.

3. Defendants are hereby ordered and directed to pay plaintiffs the sum of $13,500 the purchase price paid by plaintiffs, together with all proper settlement charges, taxes paid, interest on mortgage and satisfaction thereof, and all costs and expenses incurred by plaintiffs in the repair and protection of the house on the premises from December 30, 1957, the date of settlement to May 25, 1960, the date of this adjudication.

4. Defendants are ordered to pay the costs of this proceeding.

The prothonotary is directed to give counsel notice as required by the Rules of Civil Procedure, and, unless exceptions are filed within (20) days after notice of the filing of this adjudication, the decree entered nisi will become the final decree as of course.