420 A.2d 504

**Linda GILMORE**

v.

**NORTHEAST DODGE CO., INC., Appellant.**

Superior Court of Pennsylvania.

Submitted June 29, 1979.

Filed May 9, 1980.

Reargument Denied July 7, 1980.

Raymond J. Takiff, Philadelphia, for appellant.

Stephen F. Ritner, Philadelphia, for appellee.

Before CERCONE, President Judge, and WIEAND and LOUIK, JJ.*

LOUIK, Judge:

This is an action in equity for rescission against an automobile dealership by a purchaser of a used car.

After dismissal of exceptions to the court's findings in favor of plaintiff, the instant appeal was filed.

Appellant has two basic contentions in his appeal. The first contention is that rescission is not a proper remedy for the appellee's complaint, and therefore, the Court of Common Pleas should not have exercised its equity jurisdiction. The second issue raised by the appellant questions the Findings of Fact made by the lower court. The appellant argues that the record does not support the Findings of Fact and the Court committed error by not granting a demurrer.

■■■ Since resolution of the issue of equity jurisdiction is dependent upon the circumstances of the suit, we deal with the factual issues first. In *Aiken Industries, Inc. v. Estate of Wilson*, 477 Pa. 34, 39, 383 A.2d 808, 810, 816–817, even though an equally divided Supreme Court disagreed on the result, all substantially accepted the following standard of review:

> "[T]he function of this Court on an appeal from an adjudication in equity is not to substitute its view for that of the lower court; our task is rather to determine whether 'a judicial mind, or due consideration of all the evidence as a whole, could reasonably have reached the conclusion of the Chancellor.' A Chancellor's findings of fact, approved by a court en banc, have all the force and effect of a jury's verdict if they are supported by adequate evidence and ordinarily will not be disturbed on appeal." (Citations omitted).

* Judge DONALD E. WIEAND is sitting by special designation. Judge MAURICE LOUIK of the Court of Common Pleas of Allegheny County, Pennsylvania, is sitting by designation.

Where a single judge rather than a court en banc reviews the case ". . . [f]indings of fact of a hearing judge, like the verdict of a jury, will not be disturbed on appeal absent an error of law or an abuse of discretion." *Estate of Shelly*, 484 Pa. 322, 333, 399 A.2d 98, 103.

With this standard of review in mind, we have carefully reviewed the record and find substantial evidence to support the Chancellor's findings which were approved by the court en banc. We also approve the lower court's decision not to sustain the defendant's demurrer based upon the following statement of the facts:

Linda Gilmore, the plaintiff respondent, went to Northeast Dodge on November 18, 1975, at the instigation of a friend who was an employee of Northeast Dodge. Jerry Misner, who was married to a woman, who Ms. Gilmore described as her best friend, told his employer that Ms. Gilmore was his sister—in—law. Ms. Gilmore confirmed that untruth. The friend, Jerry Misner helped Ms. Gilmore to select a 1972 AMC Hornet. Ms. Gilmore test drove the car. She asked and was told by Mr. Misner that "there was a slight spot of rusting on the front, on the hood, but other than that the car appeared in good condition, but that it would be gone over at the service department before (she took) it off the lot." Ms. Gilmore purchased the automobile relying upon the statement of Mr. Misner that "from what he knew it was a good car."

By the terms of the written contract, plaintiff paid $94.10 in cash, traded in her 1966 Volkswagon for a $800.00 credit and obligated herself to pay $2,078.16. She accepted delivery of the automobile on November 20, 1975.

About fifteen minutes after leaving Northeast Dodge, plaintiff heard a loud humming noise seemingly coming from all over the car. She pulled up to a friend's home and asked him to look at the car. They took an eight block drive, the faster they went the louder the noise became. When they returned to the friend's home and shut the motor off, "the whole car just went dead." The lights would not work; the horn would not work; and the motor would not start. Ms. Gilmore's friend looked under the hood and

observed with plaintiff that the battery and its terminals were covered with corrosion. After cleaning the battery, the car began working again.

Ms. Gilmore and her friend immediately called Northeast Dodge. Plaintiff expressed her dissatisfaction with the car. She asked to cancel the contract. Defendant refused. The finance manager proposed that plaintiff return the vehicle for service.

On November 21, 1975, plaintiff brought the car in for service. Mr. Misner advised her the problem was a defective fan belt. On that evening when Ms. Gilmore picked up the car, she found the car in deplorable condition. Six or seven wires were hanging from under part of the dashboard. Upon starting the car, the alternator light came on and stayed on. The gas gauge did not work. The defroster did not work. The heater did not work. Mr. Misner was with her when these discoveries were made. He suggested that the problem was a disconnected wire and that the car be brought back a second time for repairs.

Ms. Gilmore returned her car again on November 22, 1975 for repairs. On November 25, 1975, Mr. Misner called plaintiff and said, "that he had been working on the car all day, that there was a short somewhere in the car; that they had taken the whole car apart and still couldn't find the difficulty." He further added that it would cost her One hundred dollars ($100.00). Plaintiff could not afford that so she told them to put the car back together and she would pick it up. Upon arrival and getting in the car, Ms. Gilmore found that there was a crack about four inches long underneath the steering column, and a three foot long section of the dashboard was lying on the seat.

On Thanksgiving Day the auto stopped running while being driven on a public street in Philadelphia. The plaintiff glided the car to the curb and went into a nearby home to call a friend, who tried to start the car. It did not start. The auto was towed to a local service station and from there to plaintiff's home. The plaintiff met with representatives of defendant on December 3, 1975, in an attempt to rescind the contract and get her Volkswagon back.

We must next decide whether the facts of this case, as stated above, and the remedy sought by the respondent properly lend themselves to an exercise of equity jurisdiction. Since rescission is unquestionably an equitable remedy, the real question raised by the appellant is whether or not rescission is the appropriate remedy for the respondent.

■ Equitable rescission may be imposed if the purchaser was induced to enter a contract or sales agreement by material misrepresentation. *Lake v. Thompson*, 366 Pa. 352, 77 A.2d 364 (1951); *Underwood v. Monte Asti Buick, Co.*, 73 Pa.D.&C.2d 773 (1976). The Pennsylvania Supreme Court addressed this issue in more detail in *LaCourse v. Kiesel*, 366 Pa. 385, 390, 77 A.2d 877, where the Court stated:

". . . A material misrepresentation of an existing fact confers on the party who relies on it the right to rescind whether the defendants here actually knew the truth or not, especially where, as here, they had means of knowledge from which they are bound to ascertain the truth before making the misrepresentation. Misrepresentations made under such circumstances *are* fraudulent and have been variously called implied, constructive or legal fraud or fraud in Equity . . . but even where innocently made, if material, are nevertheless grounds for rescissions . . ."

■ The Chancellor found that the appellant through its agent and employee, Mr. Misner, made two material misrepresentations. Mr. Misner first held out to Ms. Gilmore that he had some familiarity with the car and he believed it to be free of defects, except for a rust spot on the hood. Secondly, he indicated that, even if there were other defects, Northeast Dodge's service department would inspect the car before she took it off the lot. These are affirmative representations which go beyond descriptive puffery such as calling the automobile "a dandy, a bearcat, a good little car, and a sweet job . . ." *Bertram v. Reed Automobile Co.*, Tex.Civ.App., 49 S.W.2d 517.

The fact that there were serious electrical problems and the car stopped functioning less than an hour after the sale

is sufficient to support a finding of materiality. The situation at hand is clearly within the realm contemplated by *LaCourse*, and we can find no reason to upset the Chancellor's finding of material misrepresentation.

The appellant also argues that Ms. Gilmore did not rely upon the misrepresentation or that she should not have relied upon Mr. Misner whom she knew to be a "liar" based upon his reference to her as a sister–in–law. To say that she did not rely is to say that she would have bought the car even if she did not believe the rust spot was the only problem, or that the service department would inspect it. Such a ruling would be contrary to the record, and the findings of the lower court that Ms. Gilmore did in fact rely. As to whether Ms. Gilmore should have relied upon the representations the Pennsylvania Supreme Court has stated that:

> "Where the means of obtaining information are not equal, the positive representations of the person who is supposed to possess superior means of information may be relied on." *Lake v. Thompson*, 366 Pa. 352, 77 A.2d 364, 367 (1951).

Mr. Misner, backed up by the service department at Northeast Dodge, was a person with supposedly knowledge about the condition of the car. Since Mr. Misner led Ms. Gilmore to believe he was helping her to get a good deal, there is nothing to suggest that she had any reason to doubt his material representations about the car.

Our courts have said, "Not every improper act done by a party to a litigation, will preclude him from securing equitable relief. The maxim of clean hands is applicable only where the wrong doing of the plaintiff directly affects the equitable relations subsisting between the parties . . ." *Umani v. Reber*, 191 Pa.Super. 185, 193, 155 A.2d 634, 638 (1959). The Chancellor and lower court found that the assent of Ms. Gilmore was not such that would bar her recovery in equity. While this Court admits the statement of plaintiff to be untrue, we are in complete agreement with the findings. Whether or not Ms. Gilmore was Mr. Misner's

sister–in–law or a complete stranger, made no difference in this transaction. The representation of a familial relationship was quite apart from and distinct from the obligation of Northeast Dodge to fairly represent the condition of its cars and inspect them for defects if it agreed to do so.

Finally, we must look to the elements of the remedy sought by the respondent and granted by the trial court to see if there is conformity with the principles of equitable rescission.

■ The purpose of equitable rescission is to return the parties as nearly as possible to their original positions where warranted by the circumstances of the transaction. *Fichera v. Gording*, 424 Pa. 404, 227 A.2d 642 (1967). That is exactly what the plaintiff has sought and the relief granted was designed to achieve that goal. Ms. Gilmore seeks the return of her 1966 Volkswagon, the money she expended and she wants Northeast Dodge to take the AMC Hornet back. Although her original car has since been sold, Ms. Gilmore acted timely by seeking rescission as soon as she was aware of the problems with the car.

·Order affirmed.