421 A.2d 1155

James F. McDOLE; James R. Scheuering; Milton L. Dick; Alvern L. Smith; George F. Reich; James E. Rogan; Joseph L. Scheuering; Rocco DiFonso; Russell A. Querry; Earl E. Brooks; M. W. Bromley; Ralph J. Dietrich; E. R. Schaldenbrand; Harry J. Rieseck; Wilbert V. Hochendoner; Steve J. Miklos; G. J. Bigi; Albert J. Suess, Sr.; Bernard Schmeltz; and James P. Jones, Appellants,

v.

DUQUESNE BREWING COMPANY OF PITTSBURGH

and

Kazimir ZABINSKI, Edward L. Haser, Jr., and Charles Schaldenbrand, Appellants,

v.

DUQUESNE BREWING COMPANY OF PITTSBURGH.

Superior Court of Pennsylvania.

Argued April 14, 1980.

Filed Aug. 22, 1980.

Petition for Allowance of Appeal Denied Feb. 3, 1981.

Robert L. Ceisler, Washington, for appellants.

Richard Thomas, Pittsburgh, for appellee.

Before PRICE, BROSKY and MONTGOMERY, JJ.

MONTGOMERY, Judge:

The appeal in this equity case arises from a Final Decree denying the requests of the numerous Plaintiffs–Appellants for injunctive relief and damages. The Appellants are former employees of the Defendant–Appellee, Duquesne Brewing Company of Pittsburgh (hereinafter referred to as "Duquesne"). The Appellants lost their jobs when Duquesne closed its only facility in 1972. They contended that their termination of employment was in violation of certain employment contracts which each had, with Duquesne, purportedly guaranteeing "lifetime" employment. Following lengthy hearings, the Chancellor[1] made extensive findings of fact and conclusions of law, and refused the request for

---

1. Former Allegheny County Common Pleas Court Judge Hester, who is now a member of our Court.

injunctive relief and damages asserted by the Appellants. The Chancellor's Decree Nisi was made final by the lower court *en banc*, which dismissed exceptions filed by both Appellants and Appellee.[2]

The record shows that prior to December, 1972, the Appellee owned and operated a brewery in Pittsburgh which produced malt beverages. Various employees of the Appellee were represented by labor organizations for purposes of collective bargaining. All of the Appellants, who were employees in Duquesne's Delivery Department, were represented by Local Union No. 67 of the International Union of Brewery, Flour, Cereal, Soft Drink and Distillery Workers of America, AFL–CIO (hereinafter referred to as the "Union").

Prior to 1957, the Union had negotiated successive collective bargaining agreements containing a provision, commonly called the "freeze" by the parties, which required Duquesne to maintain a complement of employees in the Delivery Department at least as large as the number employed on the date when the "freeze" provision had been first inserted into a labor agreement between the parties. In negotiations for a new collective bargaining agreement in 1957, the parties[3] discussed the termination of the "freeze" provision. It was resolved that in return for the elimination of the freeze, each of the incumbent Delivery Department employees would be given so–called "lifetime" contracts. At the request of the Union, it was agreed that the "lifetime" agreements would be set forth in individual contracts be-

2. The Decree Nisi ordered Duquesne to pay severance pay, with interest, to several employees pursuant to the terms of the collective bargaining agreement between Duquesne and the employee's union. The court *en banc* dismissed Duquesne's exceptions to that ruling and Duquesne has not appealed from that determination.

3. During collective bargaining, Duquesne was a member of an association of brewery employers known as the Western Pennsylvania Brewers Association, which negotiated on behalf of all Association members. All of the employees of the Association members were represented by different locals of the same International Union, and these locals also bargained as a group, known as the Joint Local Executive Board.

tween the employer and each individual employee, rather than be included as a provision in the collective bargaining agreement.

The individual lifetime contracts were all identical, but for the name of the individual employee who was a party to each, and they provided, in pertinent part:

"... the said [Employee name] beginning May 1, 1959, provided he is then employed by the Duquesne Brewing Company of Pittsburgh under the jurisdiction of said Local No. 67, shall thereafter be maintained in employment by the Duquesne Brewing Company of Pittsburgh so long as he shall live or until he shall reach compulsory retirement age or until he shall voluntarily retire, quit or be discharged for cause, whichever of such events shall first occur.

It is further agreed that during such employment, he shall be paid weekly the amount prescribed in the then current collective bargaining agreement between said Union and the Employer for forty (40) hours, or, in the absence of such collective bargaining agreement, that he shall be paid weekly for forty (40) hours at the hourly rate of pay then prevailing in the plant for his job classification; provided, however, that the Employer shall not be required to pay for time lost by the employee due to sickness, injury, voluntary absence, strike, or other reasons beyond control of the Employer.

This Agreement shall not be construed as being in derogation of any other rights which the Employer or the employee may have under any collective bargaining agreement between said Union and the Employer."

All were signed in either 1957 or 1958.

It is significant to note at this stage of the recitation of facts that the Chancellor made the finding of fact that during the 1957 negotiations neither of the parties at any time discussed or even contemplated the possible permanent shutdown of the brewery. Of course, that unexpected eventuality, which occurred in late 1972, led to the cause of action before this Court in the instant appeal.

Throughout the late 1960's and into the 1970's Duquesne suffered economic losses in its brewery operation for several years. It made its decision to permanently end brewing operations in late 1972, and did so on December 8, 1972. This action resulted in the termination of employment for each of the Appellants, and further resulted in the instant litigation, wherein each Appellant seeks to enforce his individual lifetime employment contract.

The Chancellor rejected the Appellants' request for injunctive relief and monetary damages. He based his action on the conclusion that it was the intent and belief of the parties, when the individual employment agreements were negotiated, that Duquesne would continue in the particular business in which the Appellants were employed. The Chancellor stated: "The implied condition that [Duquesne] would continue in the brewing business was breached in 1972 through no fault of either party, and thus, '*frustrated the purpose*' for which the contracts of 1958 were made."

The lower court *en banc* declared that the doctrine of frustration of purpose was inapplicable.[4] However, it adopted the Chancellor's findings of fact and affirmed his denial of relief to Appellants based upon the finding that the parties contemplated the continued existence of the brewery when they entered into the individual "lifetime" contracts, and that the continued existence was therefore an implied condition in the individual contracts of employment. After a thorough review of the total record, we agree with that conclusion.

 Our scope of review on the appeal of a final order in an equity action is well settled. As we stated in *Philadel-*

4. The Court *en banc* cited 6 Williston on Contracts, Rev.Ed., 1960, and *407 East Sixty-first Street Garage, Inc. v. Savoy Fifth Avenue Corporation*, 23 N.Y.2d 275, 296 N.Y.S.2d 338, 244 N.E.2d 37 (1968) for the proposition that where difficulty of performance is occasioned only by financial difficulty, performance of a contract should not be excused through the frustration of purpose doctrine. It is not required that we examine the correctness of that holding in view of our conclusions with respect to the remainder of the lower court's actions.

*phia Fresh Food Terminal Corp. v. M. Levin & Co.*, 239 Pa.Super. 287, 292, 361 A.2d 886, 889 (1976):

> "The scope of appellate review in equity cases is quite clear. A chancellor's findings of fact, when approved by the court en banc, have the force and effect of a jury verdict and will not be disturbed on appeal if supported by adequate evidence. *Herwood v. Herwood*, 461 Pa. 322, 336 A.2d 306 (1975). However, the chancellor's inferences and conclusions which are drawn from the facts, and the application of the law are always subject to review. *Adler v. Montefiore Hospital Association of Western Pennsylvania*, 453 Pa. 60, 311 A.2d 634 (1973), *cert. denied*, 414 U.S. 1131 [94 S.Ct. 870, 38 L.Ed.2d 755] (1974)."

In the instant case the Chancellor's comprehensive findings of fact, as adopted by the lower court *en banc*, are clearly supported by adequate evidence. Indeed, in their brief to our Court, Appellants specifically note that they "... take no issue with the Chancellor's findings of fact as affirmed by the Court *en banc*." Rather, the Appellants argue that the real question is "... whether the conclusion that the contracts in question are conditioned on the continued operation of the defendant's brewery is legally correct." We find that there is unquestionably sufficient evidence of record to support the Chancellor's critical finding of fact.

The Chancellor heard twelve days of testimony by the parties on the issues presented in the case. From the transcript of that testimony, he reproduced, as part of his findings of facts, some 18 pages of excerpts of testimony which supported his conclusion that the parties did not contemplate the possibility of a plant shutdown and expected the Appellee's brewery operation to continue throughout the "lifetime" terms of the individual contracts. Our repetition of the same voluminous testimony here, to explain our conclusions as to the correctness of the Chancellor's finding, and the ample evidence supporting it, is not necessary. Suffice it to note that we agree that such testimony as was cited fully supported the Chancellor's factual conclusion.

In addition to the supporting testimony, the provisions in the individual "lifetime" employment contracts support the Chancellor's critical finding. The contracts specify that the employee, during continued employment, would be paid the ". . . amount prescribed in the then current collective bargaining agreement between [the Union] and the Employer . . .". It would not be logical to have such a proviso if the parties did not contemplate the continued existence of the brewery. Indeed, if there was a cessation of operations, it would be properly expected that the Union would no longer be negotiating labor agreements. The contracts do provide for the eventuality of the absence of a collective bargaining agreement, but that proviso only lends further weight to the Chancellor's finding of fact in issue. That clause calls for the rate of pay ". . . then prevailing in the plant for his job classification . . ." In the event of a closing of the plant, such provision would obviously have no sensible application. These clauses and others compel the conclusion that the lower court had ample evidence for its conclusion that the parties entered the contracts with the contemplation that the plant would continue in operation, and the same was an implied condition of the agreements.

This construction of the agreements is appropriate under the guidelines enunciated by our Supreme Court in *Percy A. Brown & Co. v. Raub*, 357 Pa. 271, 287, 54 A.2d 35, 43 (1947):

"Contracts must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, if that intention can be ascertained from their language. [Citing cases]. Where the language of a contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes if inequitable, unusual, or such as reasonable men would not be likely to enter into, the interpretation which makes a rational and probable agreement must be preferred."

Further, we note that many other courts, when called upon to interpret "permanent" or "lifetime" employment contracts, have stated that they last only as long as the employee is able and willing to do satisfactory work, *and as long as the employer remains in business* and has work available for the employee. See *Langendorf United Bakeries, Inc. v. Moore,* 327 F.2d 592, 596 (9th Cir. 1964); *Pollock v. Welcome Wagon International, Inc.,* 199 F.Supp. 8 (D.C.N. D.1961); *Eckhart v. Plastic Film Corp.,* 129 F.Supp. 277, 280 (D.C.Conn.1955); *Stauter v. Walnut Grove Products,* 188 N.W.2d 305, 311 (Iowa 1971); *Forrer v. Sears, Roebuck & Co.,* 36 Wis.2d 388, 394, 153 N.W.2d 587, 590 (1967). We find no basis to reverse the same conclusion here.

The decree of the lower court is affirmed.