467 A.2d 821

**Leonard J. PIRILLA, Jr., Appellant,**

v.

**Bruno L. BONUCCI, Herman W. Blair, Joseph Dorazio, Elbert B. Lowther, Walter Mucci, Peter Rebottini, Thomas Kalman, Perryopolis Auto Auction, Inc., and Perryopolis Land Company, Inc.**

Superior Court of Pennsylvania.

Argued April 27, 1982.

Filed Sept. 30, 1983.

Reargument Denied Dec. 9, 1983.

Petition for Allowance of Appeal Denied March 26, 1984.

Thomas R. Wright, Pittsburgh, for appellant.

Charles W. Watson, Connellsville, for appellees.

Before ROWLEY, BECK and MONTEMURO, JJ.

ROWLEY, Judge:

This is an appeal from a final decree in equity entered by the trial court denying appellant's request for specific performance of a contract for the sale of shares of stock on the ground that the contract was not enforceable because the writings relied on by him to prove the contract do not satisfy the applicable statute of frauds, 13 Pa.C.S. § 8319 [1]. We do not agree and, therefore, reverse and remand for proceedings not inconsistent with this opinion.[2]

1. Formerly 12A P.S. § 8–319.

2. The discussion and application of the provisions of the Act of May 5, 1933, P.L. 364, art. III, § 311, 15 P.S. § 1311(B), found in the trial

The facts are stipulated by the parties. Perryopolis Land Company, Inc. and Perryopolis Auto Auction, Inc. are two closely held Pennsylvania corporations which share a common group of stockholders. On January 10, 1977, a special stockholders' meeting of each corporation was held. At that meeting appellant, Leonard J. Pirilla, Jr., who owned 9.09% of the shares of stock in each corporation, offered to buy all of the outstanding shares of stock held by the remaining shareholders in both corporations for $525,-000.00, plus a $15,000.00 commission to the Freeze Dorazio Agency, Inc. The minutes of the stockholders' meetings were recorded and reflect that all of the shareholders of both corporations were present in person or by proxy and that all of the shareholders voted to accept appellant's offer. The minutes of the two meetings likewise reflect that the officers of the two corporations were authorized by the shareholders to implement the sale of all of the shares of their stock in both corporations to appellant. Pursuant to the authorization given to the officers, a Letter of Intent was signed the next day by appellant and the officers of Perryopolis Land Company, Inc. and Perryopolis Auto Auction, Inc. which contained all the terms of the sale.[3] Subsequently, on January 20, 1977, appellant tendered a formal Stock Purchase Agreement to the other shareholders. The individual appellees, who own more than 63% of the stock of each corporation, refused to execute the Stock Purchase Agreement, and gave appellant written notice that they rejected "in total the proposed sales agreement previously delivered." At the next scheduled meetings of the two

court's opinion is misplaced since the only issue raised on appeal involves the sale of corporate stock. Although appellant originally offered to purchase the assets of each corporation as well as the stock, the deal which was consummated between the parties involved only the stock. Appellant brought his action in equity for specific performance of a contract for the sale of securities.

**3.** The Letter of Intent was signed by Peter Rebottini and Bruno Bonucci, Vice President and Secretary, respectively, of Perryopolis Land Company, and Bruno Bonucci and Elbert B. Lowther, President and Secretary, respectively, of Perryopolis Auto Auction, Inc.

corporations, the shareholders refused to ratify the minutes of the January 10, 1977 meetings and repudiated the sale.

Appellant instituted this action for specific performance, and the appellees raised the defense of the statute of frauds. The court below denied appellant's request for specific performance, finding that the statute of frauds rendered the contract unenforceable. This appeal followed.

In *Sorokin v. Krasner*, 289 Pa.Super. 324, 327, 433 A.2d 88, 89–90 (1981), our standard of review in equity cases was set forth as follows:

The scope of review of an appellate court in the consideration of an appeal from a final decree in an equity action is well established. A Chancellor's findings of fact, approved by the court en banc, are entitled to the weight of a jury's verdict and will not be reversed on appeal if supported by adequate evidence. See *McDole v. Duquesne Brewing Co. of Pittsburgh*, 281 Pa.Super. 78, 83, 421 A.2d 1155, 1158 (1980), and cases cited therein. The Chancellor's findings are afforded particular weight in cases in which the credibility of witnesses must be evaluated, as the Chancellor has had the opportunity to hear their actual testimony and to observe their demeanor on the witness stand. See *Fascione v. Fascione*, 272 Pa.Super. 530, 416 A.2d 1023 (1979). We should not reverse on appeal unless it is evident that the lower court abused its discretion, lacked evidentiary support for its findings, or was capricious in its disbelief of evidence submitted. See *Davis v. Buckham*, 280 Pa.Super. 106, 421 A.2d 427 (1980); *Commonwealth ex rel. Powelson v. Powelson*, 277 Pa.Super. 220, 222, 419 A.2d 741, 742 (1980). The same principles apply when a single judge, rather than a court en banc, reviews the case. *Gilmore v. Northeast Dodge Co., Inc.*, 278 Pa.Super. 209, 420 A.2d 504 (1980). Therefore, we must examine the evidence of record in the instant case to determine whether any basis exists for a reversal of the lower court's findings and conclusions.

■ The question presented before the Chancellor and the court en banc was a legal one, however, and not a factual one. Therefore, the trial court's legal conclusion based

upon the stipulated facts may be appropriately reviewed by us for error. The crucial question is whether an enforceable agreement for the sale of securities existed between the parties. 13 Pa.C.S. § 8319 provides that:

A contract for the sale of securities is not enforceable by way of action or defense unless:

(1) there is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price;

(2) delivery of the security has been accepted or payment has been made but the contract is enforceable under this paragraph only to the extent of such delivery or payment;

(3) within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (1) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within ten days after receipt; or

(4) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price.

It is well settled that several writings may be used to satisfy the requirements of 13 Pa.C.S. § 8319(1) if they bear an express reference to one another or manifest internal evidence of their interrelation. *Conaway v. 20th Century Corporation*, 491 Pa. 189, 201, 420 A.2d 405, 411 (1980).

In this case, there are five documents which appellant claims satisfy the statutory requirement that the contract be in writing. They are: the minutes of the January 10, 1977 meetings of each of the two corporations, the Letter of Intent signed by appellant and the officers of the two corporations, the unexecuted Stock Purchase Agreement, and the stipulation of facts submitted by the parties. The Chancellor, as affirmed by the court en banc, concluded that

none of these documents, whether considered alone or in conjunction with each other, demonstrated that the "party to be charged" had signed any "paper, document or commitment" which constituted a writing sufficient to satisfy 13 Pa.C.S. § 8319(1).

■ Appellees admit in the stipulation of facts that the events recorded in the minutes of January 10, 1977 shareholder's meetings took place. At those meetings, the officers of the two corporations were given authority to consummate the sale of all of the shareholder's shares of stock in both corporations to the appellant. The individual shareholders, who owned all of the outstanding stock of the two corporations, were represented at the January 10, 1977 meetings. It is clear that at that meeting each of the appellees authorized the corporate officers to represent them in the sale of their stock to appellant. Although the creation of an agency relationship requires a manifestation by the principal that the agent shall act for him, such a relationship may be inferred from the circumstances and need not be in writing. *Scott v. Purcell*, 490 Pa. 109, 415 A.2d 56 (1980). Therefore, since the *corporations* had no stock to sell,[4] the authority given to the officers was to act on behalf of the individual shareholders and not the corporations. The fact that the agency relationship in this case was created in the context of a corporate meeting was merely incidental.

■ Our reading of the record convinces us that the officers of the two corporations were authorized to act as agents of the individual shareholders. As such, the officers signed the Letter of Intent agreeing to sell the appellees' shares of stock in the two corporations to appellant. The Letter of Intent contains a stated quantity of stock, i.e. all the outstanding shares of both corporations, and a defined and stated price, i.e. $525,000.00, plus a $15,000.00 commis-

4. In the stipulation of facts submitted by the parties, it was agreed that neither corporation owned stock in the other, nor did either corporation hold any treasury stock. The only stock appellant could have purchased in the two corporations was that owned by the individual shareholders.

sion to the Freeze Dorazio Agency, Inc., subject to certain conditions. Consequently, the requirements of 13 Pa.C.S. § 8319(1) have been met and an enforceable contract exists.[5]

We reverse and remand the case for enforcement of the contract. In the stipulation of facts submitted by the parties, the percentage of stock owned by each appellee in each corporation is specified. The percentage of each appellee's ownership is the same in each of the corporations, with the exception of Peter Rebottini who is listed as owning 4.545% of the outstanding shares of Perryopolis Land Company, Inc. and 9.09% of the outstanding shares of Perryopolis Auto Auction, Inc. Because the percentage of each shareholder holdings specified in the stipulation of facts for Perryopolis Auto Auction, Inc. total over 100.00%, it may well be that some error has occurred in compiling the percentages of the appellees' ownership in that corporation. On remand the trial court should determine if the percentages as listed in the stipulation of facts are correct. If the percentages as listed in the stipulation of facts are correct, the trial court may hold a hearing to determine the price per share of the stock of each corporation so as to implement the division of the $525,000.00. Should an error be found, however, and it is subsequently determined that the percentages of outstanding shares owned by the various individuals in each corporation is the same, then the division of the sale price between the shareholders can be easily accomplished without the need for additional testimony.

Reversed and Remanded

Jurisdiction is relinquished.

BECK, J., files a dissenting opinion.

BECK, Judge, dissenting:

I respectfully dissent, on the grounds that the documents relied upon by appellant to satisfy the statute of frauds in a sale of securities are not sufficient to satisfy 13 Pa.C.S.

---

**5.** Because of our conclusion that the requirements of 13 Pa.C.S. § 8319(1) have been met, we do not address appellant's argument that 13 Pa.C.S. § 8319(4) has also been satisfied.

§ 8319(1). The majority apparently accepts the minutes of the two shareholders meetings as (1) written proof of the shareholders' acceptance of appellant's offer, and (2) evidence of the shareholders authorization of the officers to act as agents to complete the sale. I disagree.

My analysis begins with the nature of the writings which are in issue. The principal documents relied upon by appellant are the two sets of corporate minutes, signed by the secretary of Perryopolis Auto Auction, Inc. and the secretary-treasurer of Perryopolis Land Co. Inc. When an officer signs minutes of a meeting, he is testifying as to their accuracy for the corporation. He is not acting as an agent of the shareholders. I distinguish between a simple writing, which minutes certainly are, and a writing signed by the "party against whom enforcement is sought or by his authorized agent" within the meaning of § 8319(1).

The shareholders of both corporations assert that the unratified and repudiated minutes are not an enforceable agreement of sale. They cite *Konsuvo v. Netzke*, 91 N.J. Super. 353, 220 A.2d 424 (1966), in which the Court denied specific performance of a sale of securities where corporate minutes were offered to satisfy the statute of frauds. The Court ruled that minutes, to satisfy the statute, must be subsequently ratified and adopted by the shareholders. *Thomas v. Prewitt*, 355 So.2d 657 (Miss.1978), relying on *Konsuvo*, held that minutes, even when prepared by the corporate attorney and signed by the corporation's president and secretary, were not a sufficient writing to constitute an enforceable sales contract. I believe the reasoning in these two cases was correct.

Nor are the other documents offered by appellant, singly or together, a binding contract. The Letter of Intent, signed by the officers, is not an agreement of sale. Although the title of the document is Letter of Intent rather than "contract" or "agreement" I do not believe that the title is dispositive. However, it appears clear that if the parties themselves intended this Letter of Intent to be a final agreement of sale, there would have been no subsequent Stock Purchase Agreement prepared and submitted

by appellant. As our Supreme Court explained in *Conaway, supra,* writings must show more than plan and intent. Writings which show that the parties are still negotiating, or which look forward toward a future contract, do not satisfy the statute of frauds. The writings must demonstrate that *"a contract has been made"* (491 Pa. at 200, 420 A.2d at 411) (emphasis in original).

If any agency was created by the corporate minutes, it was to implement a sale, not to make the sale final. In each case, the officers of the corporation, in the minutes of January 10, 1977, were authorized to "proceed with the sale" provided certain conditions were met. Without more, the authority to implement an agreement does not constitute authority to make a contract. Therefore, even if the Letter of Intent could be viewed as an Agreement of Sale, the officers who signed it were not properly authorized by the minutes to complete the sale.

Appellant's contention that appellees have made a judicial admission of the existence of a contract is unconvincing. The Stipulation of Facts as to the minutes (Nos. 6 and 7, R.4) is simply that the minutes as written are an accurate record of the meetings.

For all these reasons I would affirm the lower court's order denying the request for specific performance.