**Joseph DePAEPE as Trustee of the Joseph S. DePaepe Revocable Trust, Appellant,**

v.

**William MALITO and George E. Malito, Appellees.**

No. 96–983.

Supreme Court of Iowa.

May 28, 1998.

**230**

David J. Franks of Ellard & Franks, P.L.C., Davenport, for appellant.

Patricia Rhodes Cepican and Elliott R. McDonald, III, of McDonald, Stonebraker & Cepican, P.C., Davenport, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, NEUMAN, and TERNUS, JJ.

NEUMAN, Justice.

This appeal concerns plaintiff Joseph De-Paepe's unsuccessful attempt to acquire the stock in GBM, Inc., an Iowa corporation owned ninety percent by defendant George Malito, and ten percent by defendant William Malito. DePaepe claims the district court erred when it found no meeting of the minds concerning what DePaepe alleges was an oral contract. The defendants rest their defense on the statute of frauds. We affirm.

## I. Background Facts and Proceedings.

This controversy stems from plaintiff Joseph DePaepe's interest in acquiring a Shell gas station at the intersection of Brady Street and Interstate 80 in Davenport, Iowa. The station was leased and operated by defendant George Malito. DePaepe, who owned several convenience stores in Illinois, negotiated with Malito over an extended period of time with the goal of taking over Malito's interest in the Brady Street Shell station.

Shell's leasehold rights in the station turned out to be a major obstacle to an asset transfer. Malito's lease with Shell gave Shell a right of first refusal on any sale, transfer, or assignment of Malito's interest in the premises. DePaepe, however, wanted to step into Malito's shoes without having to deal with Shell. That way he could put in his own convenience store with gas pumps at the Brady Street location.

DePaepe perceived an opportunity to accomplish his goal when, in December 1992, Shell notified its lessees (including Malito) that Johnson Oil Company had offered to take over Shell's interest in the Iowa market. As required by the Petroleum Marketing Practices Act, 15 U.S.C. § 2802(b)(2)(E), Shell notified Malito that he held a right of first refusal to act on the Johnson Oil offer. Exercise of the right required notice to Shell and an earnest money deposit of ten percent of the purchase price. Shell, meanwhile, retained its rights of first refusal under the current lease.

When Malito was unable to secure financing to make the deal with Shell, DePaepe stepped in to advance the earnest money and

personally guarantee a loan for Malito's purchase of Shell's interest in the station. In return, Malito agreed to give DePaepe an option to purchase the service station assets after Malito closed with Shell. Three such option agreements were ultimately negotiated between DePaepe and Malito, each one superseding the former. DePaepe firmly believed Shell's first-refusal rights would be triggered only by a lease or purchase of Malito's assets, not an option. Shell, however, held a contrary view. It elected to match the terms of DePaepe's option, assigning its first-refusal rights to Johnson Oil. DePaepe's counsel, testifying at trial, explained the parties' next move this way:

> It was apparent from [Shell's] letter that they wanted to end up with the location and would match—actually what they said is they felt they had a right to step into [DePaepe's] shoes as optionee, that they had some right to match even in the situation of an option. We did not think that was correct, but it was pretty clear that if [DePaepe] were to exercise the option, that they had given us notice of what their intent was. So we were looking at other ways in which [DePaepe] could end up with the station without causing [the first-refusal right] to be triggered. And the stock sale seemed to be the most sensible, I believe, way.

The parties thus abandoned their asset acquisition scheme and began discussion of a stock transfer. A brief conversation on this topic forms the centerpiece for this appeal. There appears little dispute that on June 29, 1993, both parties agreed in principle that Malito would sell, and DePaepe would buy, all the stock in GBM, Inc. for $45,000, with the deal to close on or before July 6, 1993.

The question is whether this phone conversation constituted an oral contract binding on Malito when he failed to object within ten days to a so-called "written confirmation of the agreement" prepared by DePaepe's counsel.

The record reveals that the "written confirmation" was a fourteen-page document detailing representations and warranties related to the stock sale. The document was hand-delivered to Malito's attorney. The attorney, however, was departing for a two-week vacation and had no time to review it. Upon his return there was further conversation and negotiation relating to the deal, but no transfer of stock was ever finalized. Malito ultimately negotiated a new lease with Shell.

DePaepe sued Malito for breach of contract. Malito raised a statute-of-frauds defense, asserting none of the exceptions permitting enforcement of an oral contract for the sale of securities under Iowa Code section 554.8319 (1993)[1] applied.

The district court, trying the case without a jury, observed generally that section 554.8319 applies to the transfer of stock in a closely held corporation. The court rejected, however, DePaepe's efforts to enforce the alleged oral contract based on the confirmation letter sent to Malito's attorney. The court noted that the practice of confirming a stock purchase by written confirmation was particularly suited to high volume broker transactions, not the sale of an entire business. The transaction at issue here, said the court, left unanswered questions regarding the sale's terms. Thus, the district court concluded "the most that can be said for the phone conversation between plaintiff and

---

1. The statute pertinently provides:

> A contract for the sale of securities is not enforceable by way of action or defense unless:
>
>   a.  there is some writing signed by the party against whom enforcement is sought or by that party's authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price;
>
>   . . . .
>
>   c.  within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph "a" has been received by the party against whom

enforcement is sought and that party has failed to send written objection to its contents within ten days after its receipt.

Iowa Code § 554.8319. This section was repealed in its entirety effective July 1, 1997. *See* 1996 Iowa Acts ch. 1138, § 21. A replacement section making the statute of frauds inapplicable to contracts for the sale or purchase of securities is now codified at Iowa Code § 554.8113 (1997). A savings clause provides the repeal "does not affect an action or proceeding commenced before this Act takes effect." 1996 Iowa Acts ch. 1138, § 80.

George [Malito] on June 29, 1993, was that it was an agreement to make an agreement, if the same could be negotiated. There was never a meeting of the parties' minds." This appeal by DePaepe followed.

## II.  Issue on Appeal/Scope of Review.

Malito frames the issue as whether the district court erred when it found no binding contract for the sale of stock. The parties differ as to the effect of the statute of frauds on that determination. DePaepe claims his attorney confirmed the parties' oral agreement in accordance with Iowa Code section 554.8319(c) and so, upon Malito's failure to object, the contract became enforceable. Malito argues, conversely, that the statute of frauds cannot be used to establish a contract that never existed in the first place.

Our review is for the correction of errors at law. *See Pollmann v. Belle Plaine Livestock Auction, Inc.,* 567 N.W.2d 405, 407 (Iowa 1997). The trial court's factual findings are binding on us if supported by substantial evidence. *Id.* Moreover we are obliged to view the record in the light most favorable to upholding the judgment. *Packwood Elev. Co. v. Heisdorffer,* 260 N.W.2d 543, 544 (Iowa 1977).

## III.  Discussion.

Because DePaepe can point to no written contract enforcing the parties' alleged agreement, his claim rests exclusively on the parties' June 29 phone conversation. The district court found that conversation left many unsettled questions attending the agreement DePaepe now seeks to enforce. *See Faught v. Budlong,* 540 N.W.2d 33, 40 (Iowa 1995) (affirming judgment n.o.v. where proof of numerous proposals and counterproposals signaled parties' intent to memorialize negotiations by written agreement). While the record amply supports the district court's conclusion, we choose to address the more fundamental questions posed by Malito's statute-of-frauds defense.

The district court expressed some uncertainty about whether section 554.8319 even applies to the facts before us. In reaching that conclusion, it relied on commentary in the Uniform Commercial Code which observes that "[p]aragraph (c) is particularly important in the relationship of broker (Section 8–303) and customer. Normally a great volume of such business is done over the telephone." Iowa Code § 554.8319 (U.C.C. cmt., at ¶ 4); *see, e.g., Alderson v. Francis I. duPont & Co.,* 251 So.2d 710, 711 n. 1 (Fla. Dist.Ct.App.1971) (ruling on sufficiency of confirmation letter which stated "[we] discussed my purchase of 200 shares of Cordis common stock [and the account executive] denied he had given me a firm commitment. . . . If you are the reputable firm that I believe you to be, you will go into the market and buy 200 shares for me, selling them to me at $55.00 per share."). Yet neither the U.C.C. comment nor the text of the statute make the confirmation letter procedure exclusive to exchange and over-the-counter market transactions. We have held that section 554.8319 applies to stock sales in closely held corporations. *Cambron v. Moyer,* 519 N.W.2d 381, 383 (Iowa 1994). In so holding we joined the majority of jurisdictions that have reached the question. *Id.; see also Renfroe v. Ladd,* 701 S.W.2d 148 (Ky.App.1985) (section 8–319 statute of frauds applied to alleged contract to transfer fifty percent of stock in family business as compensation to entice son-in-law, who started competitive business, to accept family employment); *Pirilla v. Bonucci,* 320 Pa.Super. 496, 467 A.2d 821, 822 (1983) (section 8–319(c) applied to attempted purchase of ninety-one percent of shares in closely held corporation by a nine percent shareholder, who relied on various writings to prove oral agreement for sale).

The district court was nevertheless on the right track. The fact that subsection (c) of section 554.8319 lends itself to transactions such as "100 shares of X at $100 per share" suggests that a certain amount of precision may be demanded when confirmation is attempted in a different context. In other words, common sense suggests that a contract to buy "all" the shares of a closely held corporation may require more detail than the purchase of a fractional share.

■ That brings us to the crux of the case—the sufficiency of DePaepe's confirma-

tion letter to enforce the parties' alleged oral agreement. By its terms, section 554.8319(c) requires a writing "in confirmation of the sale or purchase." In the customary stock purchase transaction, a confirmation slip or memo detailing the number of shares purchased at a stated price would do. *See, e.g., Khoshnou v. Paine, Webber, Jackson & Curtis, Inc.*, 525 So.2d 977, 978 (Fla.Dist.Ct.App. 1988). Such writings fall neatly under section 554.8319(c). Here, DePaepe's so-called "confirmation" of the transaction included a fourteen-page document entitled "Agreement for Purchase of Stock." One of the document's nineteen paragraphs contained twenty-eight separate warranties—required of the seller—related to such issues as inventory, liens, governmental licensing, pending litigation, financial statements, and employment contracts. The record reveals that the majority of these matters were not discussed during the June 29 conversation. Clearly the correspondence and accompanying agreement sent by DePaepe's counsel did not confirm a prior agreement, but merely sought to bring the parties' negotiations to completion. *Compare Pirilla*, 467 A.2d at 822–24 (detailed minutes of two corporate meetings revealing unanimous vote of shareholders, along with letter of intent signed by corporate officers containing stated quantity of stock to be sold at stated price, sufficient to meet confirmation requirement of § 8–319(1)), *with Papakostas v. Harkins*, 168 A.D.2d 547, 563 N.Y.S.2d 96, 97 (1990) (attorney's cover letter accompanying unexecuted contract of sale calling for "additional comments and changes" insufficient proof of confirmation to take transaction out of statute of frauds).

Moreover it is clear that the writing was not "sufficient against the sender." DePaepe was uneasy about the potential liabilities attending the transfer of stock. It is plain that without resolution of the many issues related to third-party approvals, conflicting ownership interests, and necessary authorizations, DePaepe himself would not have consummated the stock purchase. In other words, he would not have agreed to be bound by the naked terms of the oral agreement he now seeks to impose on Malito. *See GPL Treatment, Ltd. v. Louisiana–Pacific Corp.*, 323

Or. 116, 914 P.2d 682, 687 (1996) (quoting trial court finding, in U.C.C. merchant's exception context, "[a] true confirmation requires no response").

Finally, to take the agreement outside the statute of frauds, the writing must confirm three things: a "stated quantity" of "described securities" at a "defined or stated price." Iowa Code § 554.8319(a). The letter to Malito's attorney from DePaepe's attorney states merely that he has been informed "the parties have agreed to a sale of stock at a price equal to $45,000." The accompanying "Agreement for Purchase of Stock" states in the first numbered paragraph "Purchaser shall purchase and Seller shall sell ___ shares of common stock of GBM, Inc. (representing 100% of the issued and outstanding shares)" for a purchase price computed in accordance with a formula set forth in paragraph three of the agreement. The question is whether either the letter or the attached agreement satisfies the "stated quantity" requirement.

It appears the term "all" or "100%" of the outstanding shares may be sufficient to identify a stated quantity of described securities. *Tipton v. Woodbury*, 616 F.2d 170, 175 (5th Cir.1980); *Pirilla*, 467 A.2d at 824. But in *Konsuvo v. Netzke*, 91 N.J.Super. 353, 220 A.2d 424, 437 (1966), the court held insufficient a confirmation letter which stated "Pete acquires all outstanding stock on his terms according to his offer which is set forth in the minutes that we all got." To the extent that the details of the transaction were incorporated by reference into an additional document, the court held, the letter itself was insufficient to confirm an alleged oral agreement. *Konsuvo*, 220 A.2d at 437. So also courts have found vague references to previously discussed "plans" insufficient to confirm an oral transfer of stock. *See Smith v. Crockett*, 485 S.W.2d 317, 320 (Tex.Civ.App. 1972); *Conaway v. 20th Century Corp.*, 491 Pa. 189, 420 A.2d 405, 407 (1980).

The foregoing authority suggests that flexibility may be in order when assessing the sufficiency of the required writing's terms under U.C.C. § 8–319. As a general rule, the information must be readily ascer-

tainable from, and included in, the specific writings at issue. *See Holmes v. Torguson,* 41 F.3d 1251, 1254–55 (8th Cir.1994) ("For several writings to satisfy the statute of frauds collectively, they must refer to one another or be connected by internal evidence so clear that parol evidence is not needed to establish their relationship to the contract."); *Pirilla,* 467 A.2d at 824 ("It is well settled that several writings may be used to satisfy the requirements of [U.C.C. § 8–319] if they bear an express reference to one another or manifest internal evidence of their interrelation."); *Conaway,* 420 A.2d at 411 ("several writings may be used to satisfy the statute of frauds if they bear either an express reference one to another or internal evidence of their interrelation"); *Colt v. Fradkin,* 361 Mass. 447, 281 N.E.2d 213, 217 (1972) (unsigned letters included in envelope with signed subscription sufficient to satisfy statute of frauds because contents of envelope considered a single instrument in light of all the circumstances).

Even applying a flexible standard to the "confirmation" writing before us, however, we find it patently insufficient to enforce an obligation against Malito. Principal among its deficiencies is the uncertainty the letter reveals over who owns the stock to be transferred. The letter assumes George Malito is the sole shareholder with ability to transfer 100 percent of the stock in GBM, Inc. This was, in fact, an incorrect assumption; George's son, William, owns ten percent of GBM's shares. DePaepe's agreement to purchase "all" George's shares could thus be construed to mean 100 percent of George's ninety percent holding. Because William's interest was unknown to DePaepe at the time, DePaepe has little ground to assert an agreement to have purchased it.

## IV. Conclusion.

█ The statute of frauds is a rule of evidence, not of substantive law. *See Sun Valley Iowa Lake Ass'n v. Anderson,* 551 N.W.2d 621, 630 (Iowa 1996) (discussing application of statute in context of oral contract for sale of real estate). The rule governs the way certain oral agreements may be proved; it does not furnish "conclusive proof of the existence of the oral contract, let alone of its terms." *Khoshnou,* 525 So.2d at 979 (quoting James J. White & Robert S. Summers, *The Handbook of the Law Under the Uniform Commercial Code* § 2–3, at 57 (2d ed.1980)). Here the so-called "confirmation" did not meet even the threshold requirements of Iowa Code section 554.8319 for enforcement of an alleged agreement for the sale of securities. *See Turner v. MCI Telecomm.,* 203 Ga.App. 71, 416 S.E.2d 370, 373 (1992) ("[I]n the absence of delivery, payment or admission in judicio, an alleged agreement for the sale of securities is unenforceable unless its existence is reflected in writing which fulfills the requirements of either [U.C.C. § 8–319] subsection (a) or subsection (c)."). Plaintiff furnished insufficient proof of agreement between the parties and could not rely on the defendants' failure to object to his written characterization of the agreement as the means of establishing it. The district court's judgment for the defendants must be affirmed.

**AFFIRMED.**