J-A27044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MUTUAL PHARMACEUTICAL COMPANY, INC., AND UNITED RESEARCH LABORATORIES, INC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| SPIRIDON SPIREAS, ERIC WARREN GOLDMAN, PERSONAL REPRESENTATIVE OF THE ESTATE OF SANFORD M. BOLTON AND HYGROSOL PHARMACEUTICAL CORP. | |
| Appellees | No. 1287 EDA 2016 |

Appeal from the Order March 16, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 000741, May 2011

BEFORE:  PANELLA, J., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 03, 2017**

Mutual Pharmaceutical Company, Inc., and United Research Laboratories, Inc., (collectively, "Mutual" or "Appellants") appeal from the order, entered in the Court of Common Pleas of Philadelphia County, which granted summary judgment[1] in favor of Dr. Spiridon Spireas, the Estate of

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The order granting summary judgment did not dispose of all claims in this matter since Spireas and Hygrosol have counterclaims that remain pending. However, the order was certified as final to assist in the resolution of the case.  **See** Order, 4/12/16; Pa.R.A.P. 341(c).

Dr. Sanford M. Bolton, and Hygrosol Pharmaceutical Corporation (collectively, "Spireas" or "Appellees"). After careful review, we affirm.

The trial court summarized the relevant facts of this matter as follows:

This case involves an effort by a generic drug manufacturer to revisit a 1998 patent licensing agreement [(the "Licensing Agreement")] on grounds that include fraud. After earning hundreds of millions of dollars by using the license, [Mutual] now claim[s] breach of contract, fraudulent misrepresentation, and unjust enrichment. [Mutual] also ask[s] for declaratory judgment.[2]

. . .

The patents involve "liquisolid technology" which was developed by Dr. Sanford Bolton and Dr. Spiridon Spirea[s] at laboratories at St. John's University [("St. John's" or the "University")] in New York in the 1990's. Liquisolid techniques are prized by generic pharmaceutical companies because the technology makes their production of liquid-based drug products substantially easier. The doctors licensed their patents to [Mutual] in 1998, but the events leading up to the present dispute began in the 1980's.

In 1986, Dr. Bolton was a St. John's professor and Dr. Spireas was his doctoral student. During their collaboration, they both signed agreements with St. John's relating to who owns patent rights over technology they were developing at St. John's. Dr. Spireas' chief interest was "liquisolid" research and he wrote his dissertation on the subject under Dr. Bolton's sponsorship. Dr.

_____

[2] Mutual requested a declaration that: (1) Appellees do not own any right, title or interest in the technology, patent, or process in the patent that are the subject of this litigation; (2) Spireas and Bolton did not have the full and exclusive right to license, utilize or market the technology; (3) Mutual has no remaining payment obligations under the parties' license agreement; (4) a constructive trust is proper and shall be imposed; (5) Mutual is entitled to an award of all fees and costs incurred in bringing and prosecuting this action; and (6) Mutual is entitled to pre- and post-judgment interest.

Spireas left St. John's after he received his Ph.D. in 1993; Dr. Bolton retired from St. John's the next year.

Bolton and Spireas then formed [Hygrosol]. Patents were granted to the doctors and their company and [Mutual] sought licensing rights. In 1998[,] the parties entered into a License Agreement which assured that the licensors were "the sole and exclusive owners of all rights, title and interest in and to the Technology and the Patent." By all accounts, this license proved to be very profitable for [Mutual].

Thereafter, St. John's filed a federal lawsuit against the doctors and Hygrosol asserting claims about patent assignment and distribution of profits earned through licensing. St. John's claims derived from their 1980's agreements with Bolton and Spireas.

While St. John's federal lawsuit was pending, Mutual filed this lawsuit, alleging Bolton, Spireas and Hygrosol misrepresented their ownership rights to the [l]iquisolid patents. They claim misrepresentation caused them an unknown monetary loss. On January 16, 2015, the three defendants and St. John's settled their lawsuit in federal court.

Trial Court Opinion, 3/16/16, at 1-2 (citations omitted).

After the federal suit settled, a stay that had been placed on this litigation was lifted. Bolton's estate filed a motion for summary judgment on June 25, 2015, which was joined by Spireas and Hygrosol. Oral argument took place on January 20, 2016, and the trial court granted the motion on March 16, 2016. At Mutual's request, the court issued an order on April 12, 2016, indicating that the order granting summary judgment in favor of Appellees was a final order, an appeal of which would facilitate resolution of the case. *See* Pa.R.A.P. 341(c). Thereafter, Mutual filed a timely notice of appeal. Mutual raises the following issues for our review:

1. Whether the trial court erred in holding, before discovery was complete, that [Appellees'] settlement agreement with a third party precluded Mutual's claim for declaratory judgment that

a patent license was voidable because Appellees did not own the patent they purported to license to Mutual?

2. Whether the trial court erred by dismissing contract and fraudulent inducement claims, before discovery was complete, based on the conclusion that Mutual could not prove it was injured by having paid tens of millions of dollars in patent royalties to Appellees[,] who did not even own the patent at issue?

3. Whether the trial court erred in dismissing an unjust enrichment claim on the ground that the parties have a contractual relationship before it ha[d] been adjudicated whether the parties' patent license agreement is valid?

4. Whether the trial court erred in dismissing Mutual's claims before it could take relevant fact discovery and before any expert discovery whatsoever?

Brief for Appellants, at 5.

We begin by stating our standard and scope of review of an order granting summary judgment:

Our scope of review is plenary, and our standard of review is the same as that applied by the trial court. . . . An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo.*

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

- 4 -

***LEM 2Q, LLC v. Guar. Nat. Title Co.***, 144 A.3d 174, 178 (Pa. Super. 2016) (en banc) (citation omitted).

In its first issue, Mutual asserts that granting summary judgment in favor of Spireas was premature with regard to its claim for declaratory judgment that the patent license was voidable. We disagree.

It is undisputed that Spireas entered into an agreement with Mutual to license the patents without owning rights to the patents, since those rights had been conveyed to the University. However, it is also undisputed that Mutual paid royalties to Spireas as set forth in the Licensing Agreement because Mutual profited from its use and development of the patents.

The trial court granted summary on account of the settlement between Spireas and the University. While Spireas and the University have settled both retroactively and prospectively regarding ownership of the patents, we note that Mutual has not been specifically released by the University as part of the settlement.

> As to
>
> [t]he Declaratory Judgments Act[,42 Pa.C.S. §§ 7531-7541, it] empowers courts "to declare rights, status, and other legal relations whether or not further relief is or could be claimed," and these declarations "have the force and effect of a final judgment or decree." [42 Pa.C.S.] § 7532. To bring a declaratory judgment action,
>
> > there must exist an actual controversy, as declaratory judgment is not appropriate to determine rights in anticipation of events which may never occur. It is an appropriate remedy only where a case presents antagonistic claims indicating imminent and inevitable litigation.

***Selective Way Ins. Co. v. Hosp. Grp. Servs., Inc.***, 119 A.3d 1035, 1046 (Pa. Super. 2015) (citations and brackets omitted). Additionally, declaratory judgment is not available "for consideration of moot cases or as a medium for the rendition of an advisory opinion which may prove to be purely academic." ***Gulnac by Gulnac v. S. Butler County Sch. Dist.***, 587 A.2d 699, 701 (Pa. 1991).

We note that the allegedly "antagonistic claims indicating imminent and inevitable litigation" include other lawsuits against Mutual that have been filed by Spireas' companies, Hygrosol and SigmaPharm, seeking additional royalties. Additionally, Mutual is apparently threatened by a lawsuit not yet initiated by the University against Mutual in relation to the royalties paid to Spireas regarding use of the patents. The trial court held that because "all [Appellees] have settled their differences with St. John's University," no "threat of litigation, let alone any that is 'imminent and inevitable,'" exists that would affect Mutual and justify a declaratory judgment. Trial Court Opinion, 3/16/16, at 5. Mutual takes issue with this assessment, noting that

> [t]he trial court seemed to believe that Mutual brought the declaratory action against [Appellees] solely out of fear that the University might sue Mutual, and also to consider the University unlikely to bring such a claim. But . . . Mutual also brought its declaratory action because of the ongoing controversy between Mutual and [Appellees] over Mutual's obligation to pay additional royalties under the License Agreement [in the Hygrosol and SigmaPharm cases].

Brief for Appellants, at 27.

Mutual cannot move forward with a declaratory action to hold the Licensing Agreement voidable on the basis of the ongoing litigation in the Hygrosol and SigmaPharm suits, however, because it has represented that the claims in those matters are "wholly distinct from, and unrelated to, the claims in the Complaint" in this matter. Mutual Motion to Sever, at ¶ 13. Hygrosol's claims were initially counterclaims that Mutual convinced the trial court to sever from the instant action because the claims were allegedly separate. Thus, Mutual cannot now attempt to argue they are intertwined. Moreover, "declaratory relief should be withheld when the request for relief is an attempt to adjudicate the validity of a defense to [another] lawsuit. *Osram Sylvania Prod., Inc. v. Comsup Commodities, Inc.*, 845 A.2d 846, 848 (Pa. Super. 2004).

As to the allegedly imminent threat of litigation involving the University, we note that although Mutual was not released from liability, a release was offered to Mutual in exchange for dismissing the instant litigation and Mutual refused to enter into it. *See* Appellant's Brief, at 27. The University has been compensated via the settlement with Spireas, making the University seeking further recovery from Mutual an unlikely proposition since the additional damages would be speculative. Indeed, though the trial court did not spell it out in so many words, the settlement between the University and Spireas essentially vitiates any claims the University may have against Mutual. Thus, the entry of a declaratory

judgment in Mutual's favor in these circumstances essentially would be an academic exercise. **Selective Way**, **supra**.

Moreover, the Licensing Agreement is not voidable as a matter of law, since Mutual has been profiting from the contract and has been getting the benefit of its bargain for nearly 20 years since entering into it in 1998; rescission of the contract would be an appropriate remedy only if the parties could be returned to their original positions. **See Fichera v. Gording**, 227 A.2d 642, 644 (Pa. 1967) ("[R]escission should be made while the parties can still be restored to their original positions."); **see also Gilmore v. Northeast Dodge Co.**, 420 A.2d 504, 507 (Pa. Super. 1980) ("The purpose of equitable rescission is to return the parties as nearly as possible to their original positions where warranted by the circumstances of the transaction.") Here, because of the profit from the Licensing Agreement that has flowed to all parties involved, it is not possible to return the parties to their original positions. Returning the parties to their original positions is also not warranted by the circumstances presented in this case, since the arrangement between the parties has been a successful one. Accordingly, the Licensing Agreement cannot be deemed voidable, nor can Mutual have the option of rescinding the agreement. The trial court therefore did not err in granting summary judgment. **LEM 2Q**, **supra**.

Next, Mutual asserts that the trial court erred by dismissing its contract and fraudulent inducement claims,[3] based on the conclusion that Mutual could not prove it was injured by having paid patent royalties to Appellees.

We note that Mutual would not have had to pay royalties to Spireas unless it was making a profit as set forth in the Licensing Agreement. Mutual appears to believe it would not have paid as much in royalties had it negotiated a different licensing agreement with someone other than Spireas or Bolton. This argument is wholly speculative. Additionally, as we noted above, Mutual has received the benefit of its bargain for nearly 20 years; it is a stretch for Mutual to claim damages for paying royalties after making its profit as established in the Licensing Agreement. Mutual argues that Appellees did not own the patents and therefore they could not license them, and that this indicates an injury to Mutual. While the University may have had an ownership interest in the patents, Dr. Bolton had the authority to license the patents in any event. **See** St. John's University Complaint, at ¶ 49 ("Bolton had a contractual obligation to account to [the University] for all

_____

[3] We note the incongruity of Mutual claiming that the contract with Spireas was illusory and simultaneously maintaining a breach of contract action. **See Wedgewood Diner, Inc. v. Good**, 534 A.2d 537, 538 (Pa. 1987) ("Appellants may not maintain at the same time in separate counts of one action . . . claims for rescission of a contract and restitution on the one hand and for damages for breach of the same contract together with expectation interest, on the other hand. These remedies are essentially inconsistent.")

**revenues received, by or on behalf of Bolton**, in connection with any patentable inventions, discoveries, processes, uses, products, or combinations, resulting, in whole or in part, from Bolton's use of the laboratories or other facilities of [the University.]" (emphasis added)). Thus, this argument fails.

Mutual's third claim on appeal is that the trial court erred in dismissing its unjust enrichment claim on the basis that a contractual relationship exists between the parties. However, Mutual has admitted that an enforceable contract exists. **See** [Appellees'] Complaint, at ¶ 57 ("The License Agreement is a valid and enforceable contract."). Thus, Mutual has chosen to affirm the contract, and were it appropriate, damages would be the correct remedy. Accordingly, we find this issue to be without merit. **See Wedgewood Diner**, **supra** at 538 (one can seek either equitable remedy or damages; affirmance of contract allows for legal remedy of recovery of damages).

Finally, Mutual argues in broad fashion that summary judgment was prematurely granted prior to the completion of relevant fact and expert discovery taking place. However, as our analysis of the issues above shows, such discovery would not magically turn Mutual's claims into good claims as a matter of law. Accordingly, this issue is without merit.

Order affirmed.

Justice Fitzgerald did not participate in the consideration or decision of this matter.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/3/2017